# *EXHIBIT A*

**WHOLESALE BROKER AGREEMENT**

THIS WHOLESALE BROKER AGREEMENT ("*Agreement*") is made and entered into as of January 31, 2012, between United Wholesale Mortgage ("*UWM*"), with its office located at 555 S. Adams Road, Birmingham, Michigan 48009, and Ramon Von Walker dba Mount Diablo Lending ("*Broker*") with its principal offices located at 1070 Concord ave #210. Concord CA 94520

RECITALS:

WHEREAS, UWM is engaged in the business of, among other activities, purchasing and/or funding mortgage loans on residential real estate and reselling such loans in the secondary mortgage market; and

WHEREAS, Broker is engaged in the business of taking applications for residential mortgage loans; assisting borrowers in pre-qualifying for mortgage loans; selecting a mortgage product and completing an application; and processing those applications on behalf of others in exchange for a fee or other consideration; and

WHEREAS, during the term of this Agreement, UWM will advise Broker of UWM's various FHA, VA, and/or conventional mortgage loan products as well as select bond program mortgage loan products, and Broker intends, from time to time, to offer to UWM for potential purchase and/or funding certain FHA, VA, and/or conventional mortgage loans as well as select bond program mortgage loans which fall within the parameters of UWM's mortgage loan products;

NOW, THEREFORE, in consideration of the mutual agreements and covenants hereinafter set forth, and other good and valuable consideration, the receipt and legal sufficiency of which is hereby severally acknowledged, UWM and Broker hereby agree as follows:

## ARTICLE I
## DEFINITIONS

All words and phrases defined in this Article I (except as herein otherwise expressly provided or unless the context otherwise requires) shall, for the purposes of this Agreement, have the following respective meanings:

**1.01.** ***"Agreement"*** means this Wholesale Lending Agreement and any written amendments or modifications hereto which have been signed by duly authorized representatives of both UWM and Broker.

**1.02.** ***"Bond Authority"*** means a federal, state or local authority established for the purpose of making residential Mortgage Loans to low and moderate income borrowers and issuing bonds or other obligations to fund such loans.

**1.03.** ***"Bond Program"*** means a qualified single family residential Mortgage Loan program of a local, state or federal housing authority under which residential Mortgage Loans are made available to low and moderate income borrowers at below market interest rates and/or upon other terms and conditions favorable to the borrowers.

**1.04.** "***Borrower***" means the person or persons who submit a Mortgage Loan Application to Broker, receive a Mortgage Loan, and are liable on a Mortgage Note to UWM.

**1.05.** "***Closing***" means the funding of a Mortgage Loan by Lender

Broker's Initials: RW

**1.06.** ***"Defect"*** means a breach in any respect of any representation or warranty herein contained with respect to a Mortgage Loan or any failure by Broker to comply with any covenant or condition herein contained with respect to a Mortgage Loan which could reasonably be expected to result in a loss or damage to UWM or a subsequent purchaser of such Mortgage Loan.

**1.07.** ***"Defective Loan"*** means any Mortgage Loan that has a Defect.

**1.08.** ***"FHA"*** means the Federal Housing Administration.

**1.09.** ***"FHLMC"*** means the Federal Home Loan Mortgage Corporation.

**1.10.** ***"FIRREA"*** means the Financial Institutions Reform, Recovery and Enforcement Act of 1989.

**1.11.** ***"FNMA"*** means the Federal National Mortgage Association or any successor thereto.

**1.12.** ***"GNMA"*** means the Government National Mortgage Association or any successor thereto.

**1.13.** ***"Mortgage"*** means a valid and enforceable Mortgage, Deed of Trust, or other Security Instrument creating a first or second lien upon described real property improved by a one-to-four family residential dwelling, which secures a Mortgage Note.

**1.14.** ***"Mortgage Documents"*** means all documents and instruments required by UWM and applicable law pertaining to a particular Mortgage Loan.

**1.15.** ***"Mortgage Loan"*** means a loan to individuals which is secured by a Mortgage and is subject to this Agreement.

**1.16.** ***"Mortgage Loans"*** means each and every Mortgage Loan, which is subject to this Agreement.

**1.17.** ***"Mortgage Loan Application"*** or ***"Mortgage Loan Applications"*** means an application for a Mortgage Loan processed by Broker in accordance with the lending requirements of UWM, the terms of this Agreement, all applicable governmental regulations, and the generally accepted practices and procedures within the mortgage industry.

**1.18.** ***"Mortgage Note"*** means a written promise to pay a sum of money at a stated interest rate during a specified term that is secured by a Mortgage.

**1.19.** ***"Repurchase"*** means the obligation of the Broker to purchase a Mortgage Loan from UWM which was previously sold to UWM by the Broker.

**1.20.** ***"RESPA"*** means the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601, et seq.), as amended from time to time.

**1.21.** ***"Servicing Rights"*** or ***"Servicing"*** means the rights, title, and interest in and to the servicing of the Mortgage Loans and the maintenance and servicing of the escrow accounts, along with the right to receive the servicing fee income and any and all ancillary income arising from or connected with all such Mortgage Loans.

**1.22.** ***"Underwrite"*** or ***"Underwriting"*** means the examination of a Borrower's application, credit history, income and financial resources for the purpose of determining whether to extend credit to such Borrower.

**1.23.** ***"VA"*** means the Veterans Administration.

Broker's Initials: [signature]

## ARTICLE II
## PURCHASE & FUNDING OF LOANS

**2.01. Purchase and/or Funding of Loans by UWM.** UWM agrees to purchase and/or fund certain Mortgage Loans from Broker, provided that all of the following requirements are met:

(a) Upon payment by UWM of the purchase price for each such Mortgage Loan so purchased and/or funded, all rights, title and interest in and to said Mortgage Loan shall be assigned and transferred by the Broker to UWM free and clear of all claims, liens and encumbrances whatsoever.

(b) Each Mortgage Loan shall be sold to UWM on a "servicing released" basis meaning that Broker shall release, transfer, convey and assign in a form and manner acceptable to UWM, all of Broker's rights, title and interest in and to the Mortgage Loan, including, without limitation, the right to provide mortgage servicing in connection therewith.

(c) All FHA, VA, conventional and select Bond Program Mortgage Loans shall be closed in the name of UWM, unless another name is specifically authorized by UWM in writing in advance of closing; and

(d) All such Mortgage Loans shall meet UWM's lending requirements and any other terms and conditions required by UWM, in its sole and absolute discretion, which may be amended from time to time.

**2.02. UWM Loan Requirements.** UWM will advise Broker from time to time regarding the types of FHA, VA and conventional Mortgage Loan products it is interested in considering purchasing and/or funding (individually a "***Mortgage Loan Product***" and collectively the "***Mortgage Loan Products***"), including, without limitation, information concerning interest rates, loan limits, loan-to-value, ratios, points, fees and underwriting requirements. Any commitment from UWM to Broker to purchase and/or fund any Mortgage Loan or Mortgage Loans or Mortgage Loan Applications will be issued in accordance with UWM's current lending policies and shall be in UWM's sole and absolute discretion. Such commitment must be in writing and be signed by an authorized employee of UWM and the terms of such commitment will be applicable only to the Mortgage Loan or Mortgage Loans specified therein. UWM may, in its sole and absolute discretion, cancel or discontinue any commitments, with or without notice to the Broker. UWM will attempt to give advance notice of such changes but shall have no obligation to do so. Broker agrees to follow all practices and procedures required by UWM, as modified from time to time.

**2.03. Pricing of Loans; Lock-in Rates.**

(a) UWM will provide price protection for the Mortgage Loans which it agrees to purchase and/or fund hereunder in the form of a written lock-in confirmation pursuant to its lock-in policies and in accordance with UWM's lending requirements. The time at which the interest rate for a Mortgage Loan is locked in shall be at Broker's option, provided, however, a Mortgage Loan with a locked in interest rate must be presented to UWM for purchase and/or funding before the expiration of the lock-in period. For purposes of the Agreement, the "***lock-in period***" shall be determined in accordance with UWM's lending requirements. If a Mortgage Loan is not presented for funding by UWM within the lock-in period, such Loan may be re-priced at the sole option of UWM. The transfer or sale by Broker of a Mortgage Loan locked in by UWM during the lock-in period to another entity, shall constitute a violation of the Agreement, and the Broker shall be liable, and promptly indemnify UWM, for any loss sustained as a result thereof by UWM. In addition, Broker shall notify UWM immediately should any commitment by UWM for a locked-in Mortgage Loan be canceled, withdrawn, or otherwise determined not to be set for purchase and/or funding by UWM.

Broker's Initials: RN

    (b) Broker will deliver the underwriting package to UWM not later than ten (10) calendar days prior to the expiration of the lock-in period.

**2.04** **Broker's Fees.** Broker's fee shall be payable by UWM when a Mortgage Loan is closed and funded by UWM and Broker has: (a) obtained in writing from UWM a firm commitment for UWM's interest rate, discount rate and ancillary fees; (b) successfully negotiated with the borrower(s) any fees in excess of UWM's fees for the Mortgage Loan; and (c) negotiated a spread premium fee from UWM for the Mortgage Loan, if applicable. UWM's pricing is published on a daily basis and is often adjusted several times throughout the day. All pricing is subject to change without notice and no Mortgage Loan is price protected until UWM has issued a written lock confirmation. Broker shall not be entitled to any fee if a Mortgage Loan does not fund, regardless of the reason. In the event that any fees negotiated by Broker exceed those payable under applicable law, UWM may reduce such fees to a level which is in compliance with applicable law, without notice to Broker. Broker's fees are payable only after UWM has first deducted all of its fees and charges from the loan proceeds.

**ARTICLE III**
**<u>DUTIES, WARRANTIES & REPRESENTATIONS</u>**

**3.01.** **Duties of Broker.** The Broker shall exercise its best efforts in connection with the performance of the following duties:

(a) Broker shall take Mortgage Loan Applications in accordance with applicable law at its offices in its own name through its employees and agents;

(b) Broker shall comply with all procedures established by UWM from time to time for the submission of Mortgage Loan Applications under the Mortgage Loan Programs made available to Broker;

(c) Broker shall confirm whether each Mortgage Loan Application meets the terms, conditions and requirements established by UWM with respect to the Mortgage Loan Programs;

(d) After securing the requisite authority from the applicant(s), the Broker shall secure financial and credit information from the applicant(s) and analyze the income and indebtedness of the applicant(s) to determine the maximum reasonable Mortgage Loan obligations that the applicant(s) can bear;

(e) Broker shall: (i) educate the applicant(s) in regard to the home buying and financing process; (ii) advise the applicant(s) about the different Mortgage Loan Programs made available by UWM; and (iii) explain to the applicant(s) how the closing costs and monthly payments would vary under the each of the Mortgage Loan Programs for which the applicant(s) may be eligible;

(f) Broker shall also: (i) verify the employment of the applicant(s); (ii) verify the deposits required; (iii) initiate requests for mortgage loan verifications and payoffs; (iv) order an appraisal of the property; (v) order the necessary title commitment; (vi) order a mortgage survey of the property; (vii) provide the applicant(s) with all notices and disclosures required by law; and (viii) assist UWM in obtaining any additional information reasonably required by UWM in order to consider the Mortgage Loan Applications and/or facilitate the closing of all Mortgage Loans;

(g) Broker shall communicate with the applicant(s), real estate agent(s), and UWM in an effort to keep them informed as to the status of the application and/or the Mortgage Loan transaction and any changes in the terms of a Mortgage Loan within a reasonable time, and if UWM and other lenders represented by Broker deny credit to the applicant, Broker will prepare and deliver to the applicant a denial notice meeting all requirements of applicable law;

 Broker's Initials: RS

(h) Broker shall assist the applicant(s) in understanding and clearing credit problems;

(i) perform such closing services as shall be reasonably required by UWM; and

(j) Broker shall further: (i) maintain the confidentiality all non-public personal information collected in connection with Mortgage Loan Applications; (ii) comply with all applicable privacy laws and other laws with respect to the completion and processing of Mortgage Loan Applications; (iii) maintain an information security program; and (iv) originate and process each Mortgage Loan in full compliance with applicable law, the requirements of investors, and other written communications of UWM, including those posted on its website.

(k) Broker agrees that it will not use for its own benefit or the benefit of any other person or entity and will not disclose to any person or entity the confidential information relating to UWM which it has acquired or which it may acquire during the term of this agreement.

**3.02. Duties of UWM.** UWM shall exercise commercially reasonable efforts in connection with the performance of the following duties:

(a) UWM shall Underwrite or cause to be Underwritten every Mortgage Loan submitted by Broker under this Agreement, provided, however, UWM shall have no obligation to issue a commitment for or close a Mortgage Loan which it determines, in its sole and absolute discretion, does not meet UWM's Underwriting requirements;

(b) UWM shall: (i) issue a loan approval if the Mortgage Loan Application complies with all UWM requirements and UWM elects to accept a Mortgage Loan Application; or (ii) issue a notice of rejection in compliance with law if UWM determines that any Mortgage Loan Application submitted hereunder does not meet its Underwriting standards, in its sole and absolute discretion;

(c) UWM shall duly consider each and every Mortgage Loan Application submitted by Broker and may rely upon the materials and information supplied to it by the Broker as well as the authenticity and accuracy of all signatures appearing on documents and instruments delivered to UWM; and

(d) Upon the issuance of a commitment in UWM's name to the Borrower, Lender shall proceed with Closing of the Mortgage Loan in accordance with the terms and conditions set forth in the commitment to the Borrower.

**3.03. Broker Warranties & Representations.** Broker hereby warrants, represents and covenants to UWM with regard to each Mortgage Loan submitted to UWM for underwriting, purchase and/or funding that the following are true, complete and correct in all material respects as of the date of such submission, as if such warranties, representations and covenants are again made by Broker on those dates and shall continue to be valid and accurate throughout the entire lending process:

(a) Broker is duly organized, validly existing and in good standing in each jurisdiction in which it originates Mortgage Loans delivered to UWM pursuant to this Agreement, and Broker has complied with all applicable statutes, laws, rules and regulations, orders and decrees of all federal, state, county and municipal authorities in connection with all such Mortgage Loans. Broker further has qualified, registered and obtained all licenses and permits, and has taken all other requisite actions required in order to originate all Mortgage Loans delivered to UWM pursuant to this Agreement. The execution and delivery of this Agreement and the transactions contemplated hereby are duly authorized and binding on Broker. Broker shall provide UWM with documentation to substantiate such existence and/or compliance upon the request of UWM;

Broker's Initials: RK

(b) All Mortgage Loans which Broker submits to UWM have met all material requirements of federal, state, or local laws, as amended, including, but not limited to: (i) usury; (ii) the Federal Truth-in-Lending Act of 1969 and Federal Regulation Z thereunder; (iii) RESPA and Regulation X thereunder; (iv) the Federal Equal Credit Opportunity Act and Federal Reserve regulation B thereunder; (v) the Federal Fair Credit Reporting Act; (vi) the Flood Disaster Protection Act of 1973; (vii) the Fair Housing Act; (viii) the Home Mortgage Disclosure Act; (ix) the FIRREA; (x) New York Executive Law Article 15, Section 296-a; (xi) the Gramm-Leach-Bliley Act (Pub. L. No. 106-102, 113 Stat. 1338), as amended from time to time; (xii) any and all licensing requirements relating to Broker's rights to originate and sell Mortgage Loans; (xiii) the requirements of all governmental authorities regulating Broker; and (xiv) any and all laws, rules, ordinances, and regulations concerning adjustable rate mortgages, negative amortization, and graduated payment mortgages, and Broker shall maintain in its possession, and make available for UWM's inspection, and shall deliver to UWM upon demand, evidence of compliance with all such laws and requirements;

(c) Broker has no knowledge of any circumstances or conditions with respect to any Mortgage Loan submitted to UWM for underwriting, purchase and/or funding, that the mortgaged property, the Mortgagor or the Mortgagor's credit standing could cause an institutional investor to regard the Mortgage Loan as an unacceptable investment, or otherwise cause the Mortgage Loan to become delinquent or materially adversely affect the value or marketability of the Mortgage Loan;

(d) with regard to FHA or VA insured Mortgage Loans, the Federal Housing Commissioner or VA, as applicable, has or will issue the mortgage insurance certificate or loan guaranty certificate; and all payments due for mortgage insurance premiums have been paid to the insuring authority; nothing has been done or omitted, and no circumstances exist, the effect of which act, omission or circumstances would invalidate the contract of mortgage insurance with the FHA or VA as applicable; and the Mortgage Loan complies with the regulations of the FHA or VA as applicable;

(e) All of the appraisers selected by Broker who have performed appraisals in connection with the Mortgage Loans submitted to UWM for purchase and/or funding have been properly licensed and are currently approved in accordance with UWM's approval process and applicable law;

(f) The appraisal submitted in connection with each Mortgage Loan meets the requirements of FIRREA, and the Underwriting for each Mortgage Loan, if performed by Broker, has been performed in accordance with all of the provisions of applicable law, UWM's lending requirements and the terms of this Agreement;

(g) No legal actions are pending or threatened which might reasonably affect any Mortgage Loan or the Broker's ability to transfer any Mortgage Loan to UWM free and clear of all claims and liens, or otherwise perform its obligations hereunder, except as previously disclosed by Broker to UWM in writing;

(h) Broker is not in default with respect to any material agreement to which it is party or by which it is bound, and the execution and performance of this Agreement will not violate any law, or term of its organizational and governance documents, as amended, or any material agreement to which Broker is a party or by which it is bound, and will not violate or conflict with any other restriction of any kind or character to which Broker is subject;

Broker's Initials: RW

(i) All information submitted by Broker to UWM with regard to the Mortgage Loan, including all written materials, is presented and warranted by Broker to be true, correct, currently valid, and genuine in all material respects, as to all information within Broker's knowledge and as reported by each applicant and do not omit to state any facts necessary to make the statements contained therein not misleading; Broker has no knowledge of any circumstances or conditions with respect to any Mortgage Loan submitted to UWM for underwriting, purchase and/or funding, that the mortgaged property, the mortgagor or the mortgagee's credit standing could cause an institutional investor to regard Mortgage Loan as an unacceptable investment, or otherwise cause the Mortgage Loan to become delinquent or materially adversely affect the value or marketability of the Mortgage Loan;

(j) The Mortgage Documents and all other materials submitted to UWM in connection with the Mortgage Loan do not contain any fraudulent information or misstatement or omission of fact, and the Mortgage Loan has been originated in a manner consistent with prudent mortgage banking practices and consistent with the guidelines and policies established by UWM, GNMA, FNMA, FHLMC, a Bond Authority, the FHA, or the VA, as applicable;

(k) There are no undisclosed agreements between the Mortgagor and Broker concerning any facts or conditions, whether past, present or future, which might in any material way affect the payment and performance obligations of the Mortgagor or otherwise make the Mortgage Loan non-salable in the secondary market. Broker did not unduly influence or otherwise steer the Borrower into selecting a higher cost Mortgage Loan Program than necessary;

(l) Broker is solvent and has adequate capitalization and financial resources to properly engage in the business of originating and processing Mortgage Loans;

(m) Broker shall promptly advise UWM of any material change concerning the Broker, including, but not limited to, any change in ownership, financial condition or senior management, as well as the termination of any manager, mortgage loan officer or mortgage loan originator;

(n) Broker has no interest or direct or indirect ownership of all or any part of the property subject to a Mortgage Loan and Broker has no ownership interest in, or familial relationship with, the seller(s), Borrower(s), broker(s), Realtor(s), inspectors, appraisers or other persons performing any settlement services relating to any Mortgage Loan and shall not receive any fees or payments, either directly or indirectly, in violation of applicable law;

(o) All Mortgage Loan Applications and/or Mortgage Loans presented to UWM by Broker for underwriting, purchase and/or funding have been originated by Broker, and no such Mortgage Loan Applications and/or Mortgage Loans have been originated by a third party;

(p) Broker acknowledges that it does not and shall not discriminate against applicants on the basis of age, race, color, gender, ethnic background, national origin, religion, marital status, familial status, veteran status, handicap, sexual orientation, receipt of public assistance, because rights have been exercised by the applicant under any consumer protection law, or any other prohibited basis;

(q) With respect to subsections (a) through (p), inclusive, of this Section 3.03, Broker will promptly notify UWM if Broker becomes aware that any terms, conditions, warranties, representations or covenants hereunder become untrue or incomplete in any material respect in the future;

(r) The representations and warranties of Broker set forth in this Agreement are applicable whether or not non-employee contractors are used in lieu of employees of Broker in fulfilling any of Broker responsibilities and obligations set forth in this Agreement;

Broker's Initials: RK

(s) Broker will immediately notify UWM if: (i) Broker fails to maintain any license or registration in violation of subsection (a) above, or if any such license or registration is cancelled or suspended; or (ii) Broker becomes subject to any enforcement and/or investigative proceeding by any licensing or regulatory authority or agency; or (iii) Broker is named as a party or becomes involved in any litigation; or (iv) Broker and/or any of its principal director(s) or owner(s) becomes the debtor in any voluntary or involuntary bankruptcy proceeding; or (v) Broker and/or any of its principal director(s) or owner(s) requests the appointment of a receiver, custodian or trustee; or (vi) Broker and/or any of its principal director(s) or owner(s) has incurred or is likely to incur a material, adverse change in its/their financial condition; or (vii) Broker suffers a levy, execution or seizure upon material business assets.

(t) All representations, warranties and covenants contained in this Agreement shall survive the expiration and termination of this Agreement, and inure for the benefit of UWM and its successors and assigns;

(u) Broker hereby appoints UWM and its directors, officers, employees, agents, successors and assigns, as its true and lawful attorney-in-fact, which appointment shall be deemed to be coupled with an interest, without right of revocation and with full power of substitution for and in its place and stead to: (i) demand and control all sums due on Mortgage Loans closed and funded pursuant to this Agreement and to enforce all rights with respect thereto, (ii) endorse, mark, place or otherwise evidence Broker's name as payee on all checks, drafts, acceptances or other form of partial or full payment delivered or tendered to UWM with respect to a Mortgage Loan, (iii) endorse, mark, place or otherwise evidence Broker's name on all notes, Mortgages, deeds of trust, and other forms of security instruments or collateral and all assignments, full or partial releases or satisfactions of said Mortgages, deeds of trust, and other forms of security instruments or collateral for all Mortgage Loans closed and funded pursuant to this Agreement. Broker agrees to execute such other documents as UWM may reasonably request to evidence the appointment of UWM, as Broker's attorney-in-fact.

(v) Broker has in full force and effect and will continue to maintain a fidelity bond and an errors and omissions policy or policies or mortgage bankers blanket bond covering all of its activities under this agreement, with terms acceptable to Fannie Mae and the FHLMC and shall provide to UWM, on an annual basis or as required by UWM satisfactory evidence thereof.

**3.04. UWM's Warranties & Representations.** UWM represents and warrants that UWM possesses all necessary licenses from all regulatory authorities having jurisdiction over the Mortgage Loans to engage in the activities contemplated by this Agreement.

## ARTICLE IV
## POST-CLOSING DOCUMENTATION

**4.01. Broker's Obligation Regarding Post-Closing Documents.** Broker agrees that it is responsible for assisting in obtaining and delivering post-closing documents required to complete closed Mortgage Loan packages within the time frames established by UWM in its lending requirements or otherwise. UWM, in its sole and absolute discretion, may exercise its option to NOT fund a Mortgage Loan if all underwriting and/or closing conditions are not satisfied prior to funding. Broker understands that it is not authorized or empowered to accept or clear any lending conditions of UWM. Broker further understands and agrees that if Broker fails, neglects or refuses to obtain and deliver any post-closing documents reasonably required by UWM, UWM shall have the unilateral right to offset the reasonable costs associated with securing such post-closing documents against any amounts due Broker by UWM. Broker shall upon request from UWM, exercise its best efforts to take all actions necessary, in a timely and accurate manner, to obtain corrections to any and all loan documents deemed

appropriate or desirable in UWM's sole and absolute discretion and to otherwise assist UWM in remedying any matter not in compliance with applicable law, regulations, or the requirements of UWM, including assisting UWM in obtaining recorded documentation related to a Mortgage Loan and title policies from closing agents, or to enable UWM to sell, convey, obtain guaranty for, or market loans. The failure, refusal and/or neglect of Broker to secure post-closing documentation in a timely manner shall entitle UWM to exercise a right of set off with respect to any amounts due Broker.

## ARTICLE V
## INDEMNIFICATION & REPURCHASE BY BROKER

**5.01. Indemnification by Broker.** Broker, and each of its members, equityholders, principals, partners and stockholders, jointly and severally, agrees to indemnify, defend (by counsel acceptable to UWM), and hold UWM harmless from and against any and all liabilities, claims, losses, damages and out of pocket costs ("individually a "***Claim***" and collectively the "***Claims***"): (a) resulting from any breach of this Agreement; (b) resulting from any act or omission by Broker in connection with any Mortgage Loan subject to this Agreement; (c) arising from or in connection with Broker's use of any non-industry standard form not provided or approved by UWM in connection with any Mortgage Loan; (d) concerning miscalculations and other errors which result from Broker's independent application and processing procedures as well as for its misuse of forms required by UWM; (e) asserted against UWM under provisions of RESPA, including without limitation, claims based upon, or arising as a result of, any payments received by Broker in the nature of rate spread premium, service release premium, back points, discount points, broker rebates, and the like; (f) incurred or paid by UWM as a result of the exercise of a right of cancellation or right of recession by any Borrower in connection with a Mortgage Loan; and (g) extraordinary servicing costs or carrying costs related to any Mortgage Loan as a result of any of the following circumstances: (i) any breach of any representation, warranty or covenant contained herein, or any material breach of this Agreement; or (ii) if UWM is required to repurchase any Mortgage Loan which it has sold to an investor, or which it has placed or pledged to a mortgage pool, which repurchase requirement is a result of the Mortgage Loan being classified as a Defective Loan as the result of any act or omission of Broker; (each a "***Repurchase Event***"), the Broker shall be obligated to promptly repurchase such Mortgage Loan. If any Claim shall be asserted or brought against UWM by reason of any such act or omission of Broker, Broker shall upon demand, obtain representation by legal counsel acceptable to UWM to defend UWM against any such Claim and Broker shall pay all costs and attorney's fees incurred in such defense.

**5.02. Terms of Indemnification.**

(a) Broker may be required (at UWM's option) to remit to UWM immediately upon demand a good faith advance to be applied by UWM to cover any such Claim arising from such Repurchase Event, and

(b) Broker may be required (at UWM's option) to remit to UWM immediately upon demand a non-refundable loan administration fee, and

(c) Broker shall immediately upon receipt of notice from UWM confirming the occurrence of a Repurchase Event, fully reimburse UWM for the rate premium and/or service release premium originally paid to Broker at the time the Mortgage Loan was purchased by UWM, whether such premium was included in the gross price paid or referenced separately, and

(d) Broker may additionally be required to remit to UWM immediately upon demand following a Repurchase Event, any additional amount to cover actual loss to UWM not otherwise reimbursed by the good faith advance or loan administration fee, as outlined above. Any good faith advance and additional amounts required under Section 5.02(a) and/or 5.02(b) herein in excess of actual losses will be returned to the Broker upon final loss reconciliation by UWM. Broker agrees that its failure to comply with the terms of the indemnification sections within this Agreement shall give UWM the right to demand full repurchase of said

Broker's Initials: ______

Mortgage Loan, and upon any such demand, Broker shall promptly repurchase such Mortgage Loan and reimburse UWM for all costs and expenses associated therewith.

**5.03.** **Right of Set-off.** Broker grants UWM the right of set-off and UWM may deduct any fees, penalties, damages, or other sums owed by Broker to UWM hereunder from the purchase price or loan funding of any Mortgage Loans purchased from Broker and/or funded by UWM. UWM may also withhold, set-off and apply any fees, expenses or other matters otherwise due and payable to Broker to any obligations of the Broker to UWM. UWM shall have the right to withhold any fees or payments until the Loan file is complete and the Broker has performed all of its obligations under this agreement.

## ARTICLE VI
## MISCELLANEOUS PROVISIONS

**6.01.** **Amendment of Agreement.** Except as set forth on Section 6.08, this Agreement may not be amended except in writing executed by authorized representatives of both Broker and UWM.

**6.02.** **Waiver Nonbinding**. The failure of UWM to insist in any one or more instances upon strict performance of any of the covenants, agreements, or conditions of this Agreement, or to the exercise of any rights hereunder, shall not be construed as a waiver or a relinquishment for the future of such covenants, agreements, conditions or rights, and any and all waivers must be in writing and be signed by the party waiving its rights.

**6.03.** **No Obligations To Make Loans.** Nothing contained in this Agreement shall be construed to require UWM to approve, purchase and/or fund any Mortgage Loan or Mortgage Loans submitted by Broker pursuant to the terms hereof. Approval and funding of any such Mortgage Loan or Mortgage Loans shall be in the sole and absolute discretion of UWM, and said decision will be made on a loan by loan basis. Broker shall not be obligated to submit any particular mortgage loan applications or any minimum number of loan applications to UWM.

**6.04.** **No Agency or Employment Relationship**. Both parties understand and agree that it is not intended that this Agreement create or establish a relationship of employer and employee between UWM and Broker, nor is it intended that Broker will be UWM's partner, joint venturer or agent. Broker is an

independent contractor, and is hereby expressly prohibited from holding itself out as an agent, representative or employee of UWM or of having any endorsement from or affiliation with UWM.

**6.05.** **Term.** This Agreement is for an initial term of one (1) year and shall automatically renew for successive terms of one (1) year each, unless terminated pursuant to Section 6.06 below.

**6.06.** **Termination.** This Agreement may be terminated by either party for any reason, with or without cause, breach or other justification, upon seven (7) days prior written notice, and may be terminated immediately: (a) for breach of any covenant, obligation, or duty herein contained; or (b) for violation of any law, ordinance, statute rule or regulation governing the conduct of either party hereto; or (c) upon the suspension, cancellation, or termination of any license or permit required by a party to conduct business and/or perform its obligations hereunder; or (d) if any warranty, representation or statement made by a party to this Agreement was false in any material respect when made or furnished; or (e) in the event a party becomes a debtor in any voluntary or involuntary bankruptcy proceeding; or (f) in the event that a party shall become insolvent, fails to pay its debts as they become due, or makes an assignment for the benefit of its creditors; or (g) in the event of a seizure, execution or levy upon material assets of a party; or (h) in the event of a dissolution of a party; or (i) upon the sale or disposition of a significant portion of the assets or equity interests of a party; or (j) in the event that a trustee, custodian or receiver shall be appointed in connection with material assets of a party. Termination shall not affect the obligations with respect to any Mortgage Loans submitted prior to such termination, except that UWM shall not be obligated to purchase and/or fund any such Mortgage

Loans approved prior to termination if UWM terminates this Agreement for breach by Broker on the basis of fraud, dishonesty, misrepresentation or negligence. In addition, termination shall not affect either party's obligations with respect to amounts previously owed to the other party pursuant to this Agreement, or Broker's indemnification obligations to UWM.

**6.07. Current Financials & Document Retention.** Within ninety (90) days after Broker's fiscal year-end, Broker shall provide to UWM its year-end financial statements, as well as such financial statements of Broker's principals or owners, as UWM shall require, including a balance sheet and income statement. UWM reserves the right to request financial information from Broker on a more frequent basis. If UWM acts as FHA or VA sponsor for Broker, copies of all closing documents for Mortgage Loans funded by UWM shall be retained by Broker for the time period required by FHA or VA. Broker is responsible for maintaining a complete origination file containing all documents that were used in processing and underwriting a Mortgage Loan.

**6.08. UWM Amendments & Website.** This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to prior, pending, and/or future Mortgage Loan Applications submitted by Broker. In addition, this Agreement may be amended pursuant to a writing signed by the Broker and UWM.

**6.09. Quality Control.** Broker shall permit any officer, employee or designated representative of UWM, at any reasonable time during regular business hours, to examine, reproduce and make audits of any of the processes implemented and documents in the possession or control of Broker regarding any Mortgage Loan or Mortgage Loan Application submitted to UWM pursuant to this Agreement. If upon the request of UWM, Broker fails to timely deliver all documents and records associated with or related to any Mortgage Loan or Mortgage Loan Application submitted to UWM pursuant to this Agreement, Broker shall give UWM and its officers, employees, or designated representatives reasonable access to Broker's premises in order to allow UWM to retrieve, prepare, reproduce and otherwise obtain all such documents and records. Broker shall also make its officers, employees, and/or designated representatives available to UWM and shall cooperate with UWM in connection with all such examinations, audits and document and record collection activities.

**6.10. Unacceptable Applications & Submissions**. Under no circumstances shall Broker submit any Mortgage Loan Applications for Mortgage Loans that could be considered to constitute a "high cost loan" or "predatory loan" as defined in: (a) the Home Ownership and Equity Protection Act of 1994, as amended; or (b) any other federal, state or local law or regulations.

**6.11. Broker Advertising, Non-Solicitation & Customer Privacy**. Broker may advertise to the public the availability of various loan programs and Broker's services, but Broker may not, in any way, directly or indirectly identify UWM or related parties in any such advertising unless: (i) required by applicable laws or regulations; or (ii) UWM has, in advance, approved use of UWM's name by the Broker in writing. Broker agrees that the Borrower(s) and Mortgagors on all Mortgage Loans shall, at the time of purchase, funding or closing by UWM, become the sole and exclusive customers of UWM. Neither Broker nor any of its directors, officers, managers, members, partners, employees, representatives, agents or affiliates shall, at any time following such purchase, funding or closing by UWM, target the Borrower(s) or Mortgagors for any loan refinance solicitation(s). Without the prior consent of UWM, Broker shall not prepare, sell or distribute any customer or contact list incorporating the names, addresses or any non- public personal information of such Borrower(s) or Mortgagors and shall not use any such list to solicit or promote, or to allow any other person or entity to solicit or promote, the sale of any financial services or products to any such Borrower(s) or Mortgagors.

Broker's Initials: 

**6.12. Authorization.** Broker hereby consents and gives Lender permission to obtain information about the Broker and any and all employees and independent contractors of the Broker, including, without limitation, professional history information, criminal record information, credit information and other public information. Broker hereby certifies to UWM that all required consents and approvals of its employees and independent contractors have been obtained to authorize UWM to conduct such background checks and obtain such information. Broker consents to the release of information to regulators and law enforcement agencies about any Mortgage Loan or loan application that may be suspected to contain misrepresentations and/or irregularities. It is understood and agreed that Broker and its employees may be named as the originator or loan officers on such Mortgage Loans, whether or not Broker or its employees are implicated in any allegations of wrongdoing. Broker hereby releases and agrees to indemnify, defend and hold harmless UWM from and against any and all liability for damages, losses, costs and expenses that may arise from the reporting or use of any information submitted by UWM or used in any way by UWM.

**6.13. Entire Agreement**. The arrangements and relationships contemplated in this Agreement and/or any document referred to herein constitute the sole understanding and agreement of the parties. No other or further arrangements, understandings or discussions between the parties will be considered valid unless they are in writing and executed by each of the parties, except as otherwise provided in this Agreement, this Agreement supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Agreement.

**6.14. Invalidity & Severability.** The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of this Agreement, and any provision determined to be invalid and/or unenforceable by a court or tribunal of competent jurisdiction shall be revised and reformed to make such provision valid and/or enforceable, if possible, to the fullest extent permitted by law, otherwise this Agreement shall be construed as if such invalid or unenforceable provision was omitted.

**6.15. Benefit & Assignment.** Broker may not assign its rights and/or delegate its duties and obligations under this Agreement without the written consent of UWM. UWM may assign its rights and/or delegate its duties and obligations under this Agreement to any subsidiary, affiliate or successor in interest without the consent of Broker. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns.

**6.16. Governing Law**. This Agreement shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of Michigan, without reference to conflict of laws principles. The parties to this Agreement hereby unconditionally and irrevocably: (a) submit to the jurisdiction of the Oakland County (Michigan) Circuit Court, or in the event that original jurisdiction may be established, the United States District Court for the Eastern District of Michigan, Southern Division, sitting in Detroit, Michigan (hereinafter the "Courts"), in any action arising out of this Agreement; (b) agree that all Claims in any action may be decided in either of said Courts; and (c) waive, to the fullest extent that they may effectively do so, the defenses of: (i) lack of subject matter jurisdiction of such Courts; (ii) the absence of personal jurisdiction by such Courts over the parties to this Agreement; and (iii) forum non-conveniens.

**6.17. Attorney's Fees**. In the event a dispute arises under this Agreement between Broker and UWM, which dispute results in legal action being taken by one or both of the parties, the prevailing party shall be entitled to recover its reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and the non-prevailing party hereby agrees to promptly pay same.

Broker's Initials: RH

**6.18.** **Early Payoffs.** Broker, and each of its employees, contractors, agents, representatives, consultants, members, equityholders, principals, partners and stockholders agrees not to solicit any Mortgage Loan delivered, funded and/or purchased by UWM. Should any Mortgage Loan delivered hereunder be paid off within one hundred eighty (180) days for any reason, Broker, or if Broker is incapable of paying for any reason, the current or former members, equityholders, principals, partners, stockholders, on a joint and several basis, shall promptly deliver to UWM the greater of: (a) any rate spread premium paid by UWM to the borrower or Broker; or (b) one (1%) percent of the amount of the Mortgage Loan.

**6.19.** **Enforceability & Construction**. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and to this end, the provisions hereof are severable. In the event any of the terms or provisions contained in this Agreement conflict with those contained in other documents executed in connection with this Agreement, the terms and provisions of this Agreement shall govern and control. In the event of any conflict, inconsistency or ambiguity between the terms of this Agreement and those contained in any Addendum hereto or Amendment hereof, the terms and conditions of such Addendum or Amendment shall be deemed to govern and control. Notwithstanding the foregoing, in the event of any conflict, ambiguity or inconsistency between the terms and conditions contained in this Agreement and those set forth in any Correspondent Agreement with UWM under which the Broker is the designated correspondent, the terms and conditions of the Correspondent Agreement shall be deemed to supersede and control.

**6.20.** **Counterparts & Electronic Signatures**. This Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which shall constitute the same Agreement. The parties to this Agreement hereby further agree that due to their distant locations and/or differing schedules, this Agreement may be executed via facsimile, electronic mail or electronic signature and that a facsimile or electronic signature of this Agreement containing counterpart facsimile or electronic or other signature shall be valid and binding for all purposes.

**6.21.** **Notices.** Any notices necessary to be given under the provisions of the Agreement will be sufficient if in writing and delivered personally, by U.S. certified mail, return receipt requested or by any nationally recognized express courier service to the addresses set forth below, or to such other address as may hereafter be furnished by either party to the other party by like notice, or via electronic mail if consented to by the parties;

**UWM:**
United Wholesale Mortgage
555 South Adams Road, Suite 200
Birmingham, MI 48009
Attention: BROKER ADMINISTRATION

**Broker:**
Mount Diablo Lending
1070 Concord ave #210
Concord CA 94520
Attention: Ramon Walker

**6.22.** **No Third Party Beneficiaries.** The parties to this Agreement do not intend to confer benefits upon any person or entity who or which is not a signatory to this Agreement.

**6.23.** **Time Is Of The Essence.** Time shall be of the essence for purposes of this Agreement as well as with respect to all of the documents and instruments executed in connection herewith.



Broker's Initials: RW

**6.24.** **Interpretation.** This Agreement (and all agreements, documents, instruments and/or exhibits referred to or incorporated into this Agreement) is being entered into among competent persons, who are experienced in business and represented by counsel, and has been reviewed by the parties and their counsel. Therefore, any conflicting or ambiguous language contained in this Agreement (and all agreements, documents, instruments and/or exhibits referred to or incorporated herein) shall not necessarily be construed against any particular party as the drafter of such language.

**6.25.** **WAIVER OF JURY TRIAL.** BROKER AND UWM ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. UWM AND BROKER, AFTER CONSULTING COUNSEL OF THEIR CHOICE, EACH HEREBY KNOWINGLY AND VOLUNTARILY, WITHOUT COERCION, WAIVE ALL RIGHTS TO A TRIAL BY JURY OF ALL DISPUTES BETWEEN THEM.

**WHEREFORE,** the parties hereto have executed the above and foregoing Agreement as of the day and year first above written.

**UWM**

**United Wholesale Mortgage**

**By:** [signature]

**Name:** Mat Ishbia

**Its:** President

**BROKER**

Mount Diablo Lending

**By:** [signature]

**Name:** Ramon Walker

**Its:** Owner

Broker's Initials: [initials]