# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE,
LLC,

      Plaintiff,

v.                                                    Case No. 2:24-cv-10376
                                         Hon. Brandy R. McMillion

MORTGAGE SOLUTIONS FCS, INC.
and RAMON WALKER,

      Defendants.

_____/

| | |
|---|---|
| MOHEEB H. MURRAY (P63893) | JEFFREY B. MORGANROTH (P41670) |
| WILLIAM E. McDONALD III (P76709) | JASON R. HIRSCH (P58034) |
| MAHDE Y. ABDALLAH (P80121) | MORGANROTH & MORGANROTH, PLLC |
| BUSH SEYFERTH PLLC | Attorneys for Defendants |
| Attorneys for Plaintiff | 344 North Old Woodward Avenue, Suite 200 |
| 100 W. Big Beaver Road, Suite 400 | Birmingham, Michigan 48009 |
| Troy, Michigan 48084 | (248) 864-4000 |
| (248) 822-7800 | jmorganroth@morganrothlaw.com |
| abdallah@bsplaw.com | jhirsch@morganrothlaw.com |
| mcdonald@bsplaw.com | |

_____/


**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF NO. 1] PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants, by and through their attorneys, Morganroth & Morganroth, PLLC, hereby move to dismiss Plaintiff's Complaint [ECF No. 1] with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) based upon the facts, authority and arguments set forth in the accompanying Brief.

Counsel for Defendants certifies that Jason R. Hirsch communicated with Plaintiff's counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief requested in the instant Motion in accordance with Local Rule 7.1(a). Plaintiff's counsel did not provide concurrence.

WHEREFORE, Defendants respectfully request that this Court GRANT Defendants' request to dismiss the Complaint in its entirety with prejudice.

Respectfully submitted,

/s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON R. HIRSCH (P58034)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendants
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
jhirsch@morganrothlaw.com

Dated: April 15, 2024

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC,

      Plaintiff,

v.

MORTGAGE SOLUTIONS FCS, INC. and RAMON WALKER,

      Defendants.

Case No. 2:24-cv-10376
Hon. Brandy R. McMillion

_____/

| | |
|---|---|
| MOHEEB H. MURRAY (P63893) | JEFFREY B. MORGANROTH (P41670) |
| WILLIAM E. McDONALD III (P76709) | JASON R. HIRSCH (P58034) |
| MAHDE Y. ABDALLAH (P80121) | MORGANROTH & MORGANROTH, PLLC |
| BUSH SEYFERTH PLLC | Attorneys for Defendants |
| Attorneys for Plaintiff | 344 North Old Woodward Avenue, Suite 200 |
| 100 W. Big Beaver Road, Suite 400 | Birmingham, Michigan 48009 |
| Troy, Michigan 48084 | (248) 864-4000 |
| (248) 822-7800 | jmorganroth@morganrothlaw.com |
| abdallah@bsplaw.com | jhirsch@morganrothlaw.com |
| mcdonald@bsplaw.com | |

_____/

# DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF NO. 1] PURSUANT TO FED. R. CIV. P. 12(b)(6)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INDEX OF AUTHORITIES ............................................................ iii

CONTROLLING AUTHORITY ..........................................................v

STATEMENT OF ISSUES PRESENTED ....................................... vi

Introduction.................................................................................1

Statement of Facts.......................................................................2

Argument ....................................................................................5

  I.   Standard of Review ...................................................................5

  II.   UWM's Breach of Contract Claim Against Mortgage Solutions Fails as a Matter of Law .....................................................................6

  III.   UWM's Claim for Federal Trademark Infringement Against Walker Should be Dismissed as a Matter of Law...............................................12

    A.  UWM's Claim of Trademark Infringement is an Impermissible Attempt to Muzzle Criticism and Stifle Free Speech in Violation of the First Amendment. ...........................................................12

i

B.    UWM's Claim for Trademark Infringement Should Be Dismissed as a Matter of Law Because Walker's Alleged Use of the Mark is Fair Use. ..................................................................................................14

CONCLUSION .................................................................................................18

PROOF OF SERVICE .........................................................................................19

# INDEX OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Adell Broad. Corp. v. Apex Media Sales, Inc.*, 269 Mich. App. 6; 708 N.W.2d 778
      (2005)................................................................................................................9

*Anti-Monopoly, Inc. v. Gen. Mills Fun Group*,
      611 F.2d 296 n.2 (9th Cir. 1979) ...............................................................17

*Ashcroft v. Iqbal*,
      556 U.S. 662; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009) ..................... 5, 6, 18

*Association of Cleveland Fire Fighters v. City of Cleveland*,
      502 F.3d 545 (6th Cir. 2007) .............................................................5

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544;  127 S.Ct. 1955; 167 L.Ed.2d 929 (2007) ................... 5, 6, 18

*Carter v. Target Corp.*,
      541 Fed. App'x 413 (5th Cir. 2013) ...........................................................10

*Chrysler Corp. v. Newfield Pubs., Inc.*,
      880 F.Supp. 504 (E.D. Mich. 1995) ...........................................................13

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
      109 F.3d 275 (6th Cir. 1997) ......................................................................15

*Diversified Mktg., Inc. v. Estee Lauder, Inc.*, 705 F. Supp. 128 (S.D.N.Y. 1988)..16

*Dugan v. State Farm Mut. Auto. Ins. Co.*,
      845 F.Supp.2d 803 (E.D. Mich. 2012) ............................................. 5, 11, 18

*ETW Corp. v. Jireh Pub., Inc.*,
      332 F.3d 915 (6th Cir. 2003) ............................................................. 12, 15

*G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.2d 837 (3rd Cir. 1983)...........16

*General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405 (6th Cir. 2006) ............15

*General Motors Corp.*,
    468 F.3d at 412 ........................................................................................15

*Holland v. Trinity Health Care Corp.*,
    287 Mich.App. 524; 791 N.W.2d 724 (2010) ..................................................8

*Kiser v. Reitz*,
    765 F.3d 601(6th Cir. 2014) ......................................................................14

*Parks v. LaFace Records*,
    329 F.3d 437 (6th Cir. 2003) .....................................................................12

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ......................................................................12

*Smith v. Chanel, Inc.*,
    402 F.2d 562 (9th Cir. 1968) .....................................................................17

*Wells Fargo & Co. v. WhenU.com, Inc.*,
    293 F. Supp. 2d 734 (E.D. Mich. 2003) .......................................................16

## Other Authorities

15 U.S.C. § 1125(c)(3) ....................................................................................18

McCarthy on Trademarks & Unfair Competition § 25:52 (4th ed. 2003) ..............16

Mich. Comp. Laws Serv. § 566.1 ..................................................................9, 11

## Rules

Fed. R. Civ. P. 12(b)(6) ..................................................................................2, 5

## <u>CONTROLLING AUTHORITY</u>

<u>Cases</u>                                                                                          <u>Page(s)</u>

*Adell Broad. Corp. v. Apex Media Sales, Inc.*,
    269 Mich. App. 6; 708 N.W.2d 778 (2005) ................................................. 9

*ETW Corp. v. Jireh Pub., Inc.*,
    332 F.3d 915 (6th Cir. 2003) ............................................................. 12, 15

*General Motors Corp.*,
    468 F.3d at 412 ........................................................................... 15

*Kiser v. Reitz*,
    765 F.3d 601(6th Cir. 2014) ...................................................... 14

*Wells Fargo & Co. v. WhenU.com, Inc.*,
    293 F. Supp. 2d 734 (E.D. Mich. 2003) .................................... 16

## <u>Statutes</u>

Mich. Comp. Laws Serv. § 566.1 ......................................................9, 11

## <u>STATEMENT OF ISSUES PRESENTED</u>

**I.**     Whether Plaintiff has failed to state a claim for breach of contract against Defendant, Mortgage Solutions, upon which relief may be granted where:

    a.  Plaintiff bases its claim upon an unsigned amendment to the 2020 Correspondent Agreement which is unenforceable as a matter of law.

Defendant Mortgage Solutions Answers:     Yes

Plaintiff Answers:                                          No


**II.**     Whether Plaintiff has failed to state a claim for Federal trademark infringement for which relief may be granted against Defendant, Ramon Walker, where:

    a.  Plaintiff's claim is a pretext to muzzle criticism of Plaintiff and therefore violates Ramon Walker's rights under the First Amendment to the United States Constitution; and

    b.  The alleged use of Plaintiff's mark was a fair use.

Defendant Walker Answers:     Yes

Plaintiff Answers:                     No

vi

## **Introduction**

Plaintiff, United Wholesale Mortgage, LLC ("UWM"), filed its Complaint against Defendant, Ramon Walker ("Walker"), and his company, Defendant, Mortgage Solutions FCS, Inc. ("Mortgage Solutions"), on February 14, 2024. ECF No. 1. Therein, UWM alleges a claim of breach of contract against Mortgage Solutions only (Count I) and a claim of Federal trademark infringement against Walker only (Count II).

UWM's claims represent nothing more than a vendetta against independent mortgage brokers, like Mortgage Solutions, and their principals, like Walker, who formerly worked with UWM but then chose to leave and work with UWM's competitor, Rocket Pro TPO. Not only does UWM seek to burden and harass those who choose to work with UWM's competitors, UWM also seeks to muzzle any criticism by bringing frivolous claims of trademark infringement in a transparent effort to stifle free speech and debate.[1]

---

[1] Consistent with UWM's pattern of seeking to muzzle criticism, UWM sent a cease-and-desist letter to a media outlet in an effort to prevent publication of a damaging story revealing UWM's nefarious business practices, which form the basis of a RICO and fraud lawsuit now pending in this Court. See https://hntrbrk.com/uwm/ and *Escue v. United Wholesale Mortgage*, LLC, E.D. Mich. Case No. 2:24-cv-10853-PDB-DRG.

## Statement of Facts[2]

## UWM's Breach of Contract Claim Against Mortgage Solutions

UWM is a wholesale mortgage lender that works exclusively with independent mortgage brokers and non-delegated correspondent lenders who UWM calls "Broker Partners." ECF No. 1, PageID.3-4, ¶ 9. UWM alleges that it provides its Broker Partners with "considerable resources" to help them "compete, win, and grow their business." *Id*. at PageID.4, ¶ 11. UWM alleges that its "investment into and support of its Broker Partners is meant to distinguish UWM's exceptional services … from UWM's competitors." *Id*. at ¶ 12.

Mortgage Solutions is a non-delegated correspondent lender. *Id*. at ¶ 13. Mortgage Solutions previously had a business relationship with UWM. *Id*., PageID.5 at ¶¶ 15-16. UWM alleges that Mortgage Solutions entered into a Correspondent Agreement (the "2020 Correspondent Agreement"), which was purportedly amended in 2022 by an unsigned amendment (the "Unsigned Amendment to the 2020 Correspondent Agreement"). *Id*. at PageID. 5 at ¶ 16; ECF No. 1-3 (Unsigned Amendment to the 2020 Correspondent Agreement). UWM alleges that the

---

[2] Many of the purported facts alleged in the Complaint are false, inaccurate and/or misleading. Because this Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), Defendants will not address the falsity, inaccuracies and misleading nature of the allegations in the Complaint at this time and acknowledge that the Court must accept any well-pled factual allegations contained in the Complaint as true for the purposes of this Motion only.

Unsigned Amendment to the 2020 Correspondent Agreement included an Early Payoff provision requiring Mortgage Solutions to reimburse UWM certain amounts if a loan that was delivered to UWM was paid off within 180 days of disbursement. ECF No. 1, PageID.5-6 at ¶ 17. UWM alleges that, from June 2020 through May 2023, Mortgage Solutions delivered 12 loans to UWM which were paid off within 180 days of disbursement. *Id.*, PageID.6 at ¶ 18. UWM alleges that Mortgage Solutions has failed to pay the Early Payoff balance and this alleged failure is a breach of the Unsigned Amendment to the 2020 Correspondent Agreement. *Id.* at ¶ 20.

Because the purported agreement which UWM relies upon for its breach of contract claim (the Unsigned Amendment to the 2020 Correspondent Agreement) is unenforceable as a matter of law, the breach of contract claim should be dismissed with prejudice.

### **UWM's Federal Trademark Infringement Claim Against Walker**

UWM alleges that it owns the "UWM UNITED WHOLESALE MORTGAGE" trademark (the "Mark). *Id.*, PageID.7-8, ¶¶ 22-23.

UWM alleges that Walker uses his Facebook profile to advertise the services of Mortgage Solutions. *Id.*, PageID.7 at ¶ 26. UWM alleges that Walker used his Facebook profile to create a Facebook group entitled "Rocket Pro TPO vs UWM" (the "Group"). *Id.*, PageID.9 at ¶ 29. UWM alleges that Walker used his Facebook

3

profile to promote the Group and used the Mark in doing so. *Id.*, PageID.10 at ¶ 32. UWM alleges that Walker advertised Rocket Pro TPO in the Group. *Id.*, PageID.11 at ¶ 34.

UWM further alleges that the Group's "About" section describes the Group as a "place where honest and uninfluenced conversations can take place." *Id.*, PageID.12 at ¶ 35.

UWM alleges that Walker used the Mark "in commerce by posting it to his profile and on the [Group], which [Walker] uses in connection with his advertising of goods and services he provides as a mortgage broker and correspondent lender." *Id.*, PageID.13 at ¶ 37. UWM further alleges that Walker's alleged use of the Mark is likely to cause "the mortgage industry and consumers confusion or to mistake or be deceived that UWM authorizes, sponsors, or endorses Walker's goods or services." *Id.* at ¶ 38.

Because Walker's alleged use of the Mark was fair use, and UWM's current effort to muzzle Walker violates the First Amendment to the United States Constitution, UWM's claim for Federal trademark infringement should be dismissed with prejudice as a matter of law.

4

## Argument

### I.  Standard of Review.

A motion brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims. "In deciding a motion under Rule 12(b)(6), the court must construe the complaint in favor of the plaintiff, accept the factual allegations as true, and determine whether the allegations present plausible claims … The pleading must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Dugan v. State Farm Mut. Auto. Ins. Co.,* 845 F.Supp.2d 803, 805 (E.D. Mich. 2012)  , citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Association of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007), citing *Twombly,* 550 U.S. at 544.

"The court should first identify any conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief." *Dugan,* 845 F. Supp. 2d at 805 , citing *Ashcroft v. Iqbal,* 556 U.S. 662, 684; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice. *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal quotation marks and citation omitted).

Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. (internal citation omitted). If the factual allegations are not "enough to raise a right to relief above the speculative level," the court should grant the motion. *Twombly*, 550 U.S. at 555.

## II.   UWM's Breach of Contract Claim Against Mortgage Solutions Fails as a Matter of Law.

UWM's breach of contract claim is premised upon an alleged violation of the Early Payoff Provision in the Unsigned Amendment to the 2020 Correspondent Agreement between UWM and Mortgage Solutions. ECF No. 1, PageID.5-6 at ¶¶ 17-18; ECF No. 1-3, PageID.52 at § 7.16 (Pl's exh. C). Specifically, UWM alleges that the 2020 Correspondent Agreement attached as Exhibit B to its Complaint (ECF No. 1-2) was "amended and agreed to by the parties in 2022" by an Unsigned Amendment to the 2020 Correspondent Agreement (ECF No. 1-3)

6

attached as Exhibit C to UWM's Complaint. ECF No. 1, PageID.5 at ¶ 16.

First, an unsigned amendment is prohibited by Section 7.01 of the 2020 Correspondent Agreement. ECF No. 1-2, PageID.39, § 7.01. Specifically, Section 7.01 of the 2020 Correspondent Agreement states:

> **7.01 Amendment of Agreement.** Except as provided in Section 7.07[3], this Agreement may *not* be amended *except in a writing executed by authorized representatives of both Correspondent and UWM*. ECF No. 1-2, PageID.40 at § 7.07 (italics and footnote added).

Thus, pursuant to Section 7.01 of the 2020 Correspondent Agreement, any purported "amendment" of the 2020 Correspondent Agreement itself is valid *if and*

---

[3] Section 7.07 of the 2020 Correspondent Agreement states:

> **7.07 UWM Amendments & Website.** This Agreement and the policies, procedures and instructions of UWM, including but not limited to those contained in the UWM Guide, may be amended by UWM from time to time upon written notice to the Correspondent of the amendment, which may occur by posting any such amendments on UWM's website, which Correspondent is required to regularly check and monitor as a condition of this Agreement. The Correspondent agrees that submissions to UWM after such notification shall be the Correspondent's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending and/or future submissions by the Correspondent. (italics added).

Even if Section 7.07's limited exception to Section 7.01's requirement that any modification to the 2020 Correspondent Agreement must be in a writing executed by both parties applies, UWM still alleges that the Unsigned Amendment to the 2020 Correspondent Agreement was not agreed to in any manner before *2022*, so it could not, as a matter of law, apply to at least some of the twelve loans at issue, which UWM alleges were delivered beginning in *June 2020*. ECF No. 1, PageID.5 at ¶ 16, PageID.6 at ¶ 18.

*only if* it is "in a writing executed by authorized representatives of both Correspondent and UWM." ECF No. 1-2, PageID.39 at § 7.01. Under Michigan law, clear and unambiguous contract language must be enforced as written.[4] *Holland v. Trinity Health Care Corp.*, 287 Mich.App. 524, 527; 791 N.W.2d 724 (2010).

The purported "amendment" to the 2020 Correspondent Agreement attached by UWM as Exhibit B to its Complaint is undisputedly *not* signed by either Party and UWM does not even *allege* that the purported "amendment" was ever signed. ECF No. 1-3, PageID.42 (Unsigned Amendment to the 2020 Correspondent Agreement); ECF No. 1, PageID.5 at ¶ 16 (UWM vaguely alleges that the 2020 Correspondent Agreement was "amended and agreed to by the parties in 2022."). Thus, because UWM does not even allege that Mortgage Solutions ever agreed to the purported "amendment" in a signed writing, as required by the clear and unambiguous terms of Section 7.01 of the 2020 Correspondent Agreement, and the document attached to the Complaint by UWM which purports to be the "amendment" is undisputedly not signed, the purported "amendment" is unenforceable, could not have modified the 2020 Correspondent Agreement and could not form the basis for any claim of breach of contract. ECF No. 1-2, PageID.39 at § 7.01.

Second, no additional consideration was provided for the purported

---

[4] The 2020 Correspondent Agreement is governed by Michigan law. ECF No. 1-2, PageID.40 at § 7.14.

"amendment" to the 2020 Correspondent Agreement and therefore it is void as a matter of law pursuant to Mich. Comp. Laws Serv. § 566.1. Specifically, although Mich. Comp. Laws Serv. § 566.1 permits amendments to contracts without additional consideration, an amendment made without additional consideration is valid *only* where the amendment is memorialized in a signed writing. Mich. Comp. Laws Serv. § 566.1 states:

> An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest *shall not be valid or binding unless it shall be in writing and signed by the party against whom it is sought to enforce the change, modification, or discharge*. (emphasis added).

The Michigan Court of Appeals has held that Section 566.1 applies to all types of contracts. In *Adell Broad. Corp. v. Apex Media Sales, Inc.*, 269 Mich. App. 6, 10; 708 N.W.2d 778, 781 (2005), the Michigan Court of Appeals held:

> Defendants argue that MCL 566.1 only applies to contracts involving real or personal property. We disagree. It is a common grammatical rule of construction that a modifying clause will be construed to modify only the last antecedent unless some language in the statute requires a different interpretation. MCL 566.1 addresses the amendment, modification, or discharge of several different legal documents, the last of which is "any mortgage or other security interest in personal or real property." The phrase "in personal or real property" grammatically modifies "mortgage or other security interest." It would be contrary to the plain meaning of the statute and rules of statutory construction to read the modifying phrase "in personal or real property" to modify "any contract, obligation or lease." (internal citation omitted).

Third, the Unsigned Amendment to the 2020 Correspondent Agreement clearly contemplates that it would *not* become effective unless and until it is executed by the Parties. Specifically, the Unsigned Amendment to the 2020 Correspondent Agreement acknowledges that it could be executed in counterparts or via electronic signature. ECF No. 1-2, PageID.52 at § 7.18. But the Unsigned Amendment to the 2020 Correspondent Agreement is not signed at all, electronically or otherwise. Tellingly, UWM cannot and does not even allege that it has a signed copy of the Unsigned Amendment to the 2020 Correspondent Agreement. Instead, UWM merely vaguely alleges that "The Correspondent Agreement was subsequently amended and agreed to by the parties in 2022," while citing to the Unsigned Amendment to the 2020 Correspondent Agreement. ECF No. 1, PageID.5 at ¶ 16; ECF No. 1-3. Similarly, the Unsigned Amendment to the 2020 Correspondent Agreement states that "The Parties have executed this Agreement as of the date and year first written above" (ECF No. 1-3, PageID.54), but *no date and year at all* is included in the Unsigned Amendment to the 2020 Correspondent Agreement.

This Court is not obligated to accept the plaintiff's allegations as true where, as here, they are *contradicted* by a document attached to the Complaint. See e.g., *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013) (refusing to accept as true factual allegations that were contradicted by the plaintiff's EEOC charging documents, which the defendant had attached to its motion to dismiss).

Here, UWM's bald, conclusory allegation that the Parties somehow "agreed" to the Unsigned Amendment to the 2020 Correspondent Agreement as a complete and total replacement for the 2020 Correspondent Agreement in some unidentified manner is entirely implausible as a matter of law. *Dugan*, 845 F.Supp.2d at 805 (allegations must, at a minimum, present legally plausible claims). Indeed, such an assertion is entirely belied by the Unsigned Amendment to the 2020 Correspondent Agreement, which UWM attaches to its Complaint, and which, on its face, confirms that the Unsigned Amendment to the 2020 Correspondent Agreement was never signed by the Parties even though it expressly contemplates execution by way of the Parties affixing their authorized signatures and a date. ECF No. 1-3, PageID.53 at § 7.18 (identifying the acceptable methods for executing the Unsigned Amendment to the 2020 Correspondent Agreement), PageID.54 (requiring a date of execution).

The unsigned "amendment" is void because: (1) it does not comply with Section 7.01 of the 2020 Correspondent Agreement; (2) UWM never provided any additional consideration for the purported "amendment" which is required pursuant to Mich. Comp. Laws Serv. § 566.1; and (3) the Unsigned Amendment to the 2020 Correspondent Agreement on its face confirms that it is not effective unless and until it is signed and dated by the Parties. Because the Unsigned Amendment to the 2020 Correspondent Agreement is not signed, UWM's claim for breach of the Unsigned Amendment to the 2020 Correspondent Agreement fails as a matter of law and

11

should be dismissed with prejudice.[5]

### III.    UWM's Claim for Federal Trademark Infringement Against Walker Should be Dismissed as a Matter of Law.

### A. UWM's Claim of Trademark Infringement is an Impermissible Attempt to Muzzle Criticism and Stifle Free Speech in Violation of the First Amendment.

UWM's claim for trademark infringement is nothing more than a transparent attempt by UWM to muzzle criticism against it, compare it to its primary competitor, Rocket Pro TPO,[6] and stifle speech UWM does not like (*i.e.*, unfavorable comparisons of UWM to Rocket Pro TPO).

In *Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003), the Sixth Circuit adopted the test from *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) (the "*Rogers* Test"), to determine whether the First Amendment trumps certain trademark rights. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 928 (6th Cir. 2003).

---

[5] In contrast, the 2020 Correspondent Agreement between UWM and Mortgage Solutions which is attached as Exhibit B to the Complaint indicates that it was electronically signed. ECF No. 1-2, PageID.42. The purportedly operative Unsigned Amendment to the 2020 Correspondent Agreement contains no such indicia of acceptance at all. ECF No. 1-3, PageID.54.

[6] UWM's efforts to separate and prohibit its "Broker Partners" from having any relationship with Rocket Pro TPO is well-documented and clear from the UWM's Complaint. Specifically, in the Unsigned Amendment to the 2020 Correspondent Agreement, UWM expressly prohibits its supposedly independent "Broker Partners" from submitting any loans to Rocket Mortgage a/k/a Rocket Pro TPO. ECF No. 1-3, PageID.47 § 2.01(y).

The Sixth Circuit held that the *Rogers* Test is "[not] limited to titles of artistic works . . . [and] is generally applicable to all cases involving literary or artistic works where the defendant has articulated a colorable claim that the use of a celebrity's identity is protected by the First Amendment[7]." *Id.* at 928 n.11 (footnote added).

Under the *Rogers* Test, a defendant's use of a mark subject to trademark protection will be immune from trademark liability if the use of the mark "ha[s] artistic relevance to the underlying work and . . . does not explicitly mislead as to the source of the work." *Id.* at 937.

UWM alleges that the purportedly infringing use it seeks to quell is the use of the Mark to advertise the Group.[8] ECF No. 1, PageID.9-10 at ¶¶ 30, 32. Even though UWM concedes that the Group's stated purpose is as a forum for "honest and uninfluenced conversations" to take place about the relative merits of UWM and its primary competitor, Rocket Pro TPO, UWM still claims that the use of its Mark could somehow cause confusion. *Id.*, PageID.12 at ¶ 35, PageID.13 at ¶ 38. In fact, the speech engaged in by the Group is prototypical free speech protected by the First

---

[7] Although the *Rogers* case involved the use of a celebrity image, the *Rogers* Test is not limited to cases which involve celebrity identity or image. See e.g., *Chrysler Corp. v. Newfield Pubs., Inc.*, 880 F.Supp. 504, 512 (E.D. Mich. 1995) (applying the First Amendment defense in the context of the alleged infringement of an automaker's mark).

[8] Walker ceased all use of the Mark prior to this litigation.

Amendment where members of the Group can engage in discussions on this topic in the virtual public square.[9]

UWM reveals its true improper motive (to suppress speech it dislikes and punish those who facilitate such free speech) when it alleges that the "main prerogative of the group seems to be to undermine UWM's business."[10] *Id.* at ¶ 35. In short, UWM dislikes the content of the speech being discussed in the Group, which does not include the Mark at all. It is simply looking for a way to harm the Group and any promotion of the Group because it wants to muzzle any negative discussion about UWM, which the Mark inherently and admittedly represents. ECF No. 1, PageID.7 at ¶ 24 (UWM alleges that the Mark is widely known and recognized).

### B. UWM's Claim for Trademark Infringement Should Be Dismissed as a Matter of Law Because Walker's Alleged Use of the Mark is Fair Use.

In order to show trademark infringement under 15 U.S.C. § 1114, a plaintiff must

---

[9] Even if the promotion of the Group is viewed as commercial speech, commercial speech too is protected by the First Amendment. *Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014) ("Although advertisements and other commercial speech enjoy less rigorous First Amendment protection than other forms of expression, commercial speech is nonetheless constitutionally protected so long as it 'concerns lawful activity and is not misleading.'" (internal citations omitted)).

[10] UWM's only example of speech from the Group reflects that Rocket Pro TPO is growing because originators who choose to do business with Rocket Pro TPO (a practice explicitly prohibited by UWM's Correspondent Agreement) are "saving 100% of their credit report and rescore bill." ECF No. 1, PageID.12 at ¶ 35. Thus, the speech is in fact comparing the relative merits of doing business with UWM vs. doing business with Rocket Pro TPO; UWM simply does not like that such comparison is unfavorable to it.

demonstrate that the use of the allegedly infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006) (citations omitted); see also *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) (noting that "[t]he touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is *likely to cause confusion among consumers regarding the origin of the goods offered by the parties*" (italics added)). "This Circuit considers the question of whether there is a likelihood of confusion a mixed question of fact and law." *General Motors Corp.*, 468 F.3d at 412. "Fair use permits others to use a protected mark to describe aspects of their own goods." *ETW Corp.*, 332 F.3d at 920 (citation and internal brackets and quotations removed).

Here, UWM's allegations demonstrate as a matter of law that there could be no likelihood of confusion and any use of the Mark by Walker was a fair use under recognized trademark law.

First, UWM's own allegations make clear that Walker's alleged use of the Mark could not cause confusion as a matter of law. Specifically, UWM alleges that the Mark was used to advertise a Group called "Rocket Pro TPO vs UWM." ECF No. 1, PageID.9 at ¶ 30. The name and description of the Group, on its face, completely negates any possible likelihood of confusion because they make clear that the

15

purpose of the Group is to compare UWM and Rocket Pro TPO. Indeed, Rocket Pro TPO's logo is used in the image along with the Mark, and Rocket Pro TPO's logo is equally prominent with the Mark. Thus, no reasonable consumer could be mistaken or deceived to believe that UWM authorized, sponsored or endorsed a Group that, on its face, compares UWM to its primary competitor.[11]

In addition, UWM concedes that the "About" section of the Group made clear that was a "place where honest and uninfluenced conversations can take place," thus confirming that neither UWM nor Rocket Pro TPO were sponsors of the Group.

Second, it is well-settled law that the use of a party's mark in comparative advertising is entirely permissible. In *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 761 (E.D. Mich. 2003), Judge Edmunds explained:

> Comparative advertising rests on the premise that a competitor's trademark may appear at the same time as the trademark owner's. 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:52 (4th ed. 2003) … See, e.g., *G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.2d 837, 841 (3rd Cir. 1983) (inclusion of Metamucil mark on competitor's product not a prohibited use under Lanham Act); *Diversified Mktg., Inc. v. Estee Lauder, Inc.*, 705 F. Supp. 128, 132 (S.D.N.Y. 1988) (finding phrase "If You Like ESTEE LAUDER You'll Love BEAUTY USA" lawful comparative advertising).

---

[11] Similarly, there can be no likelihood of confusion because *both* the Mark and Rocket Pro TPO's logo are equally prominent such that no consumer could possibly draw an inference that either of these two competitors endorse the Group which discussed both companies equally. Furthermore, UWM's contention that the Group's "main prerogative" is to "undermine UWM's business" would also negate any possibility of alleged confusion that UWM sponsored or authorized the Group. ECF No. 1, PageID.12 at ¶ 35.

\*\*\*

> [T]rademark laws are concerned with source identification. They are *not* meant to protect "consumer good will (sic) created through extensive, skillful, and costly advertising." *Smith v. Chanel, Inc.*, 402 F.2d 562, 566 (9th Cir. 1968). The rule favoring comparative advertising "rests upon the traditionally accepted premise that the only legally relevant function of a trademark is to impart information as to the source or sponsorship of the product." *Id*. Comparative advertisements may therefore make use of competitors' trademarks *even if the advertiser reaps the benefit of "the product recognition engendered by the owner's popularization, through expensive advertising, of the mark*." *Anti-Monopoly, Inc. v. Gen. Mills Fun Group*, 611 F.2d 296, 301 n.2 (9th Cir. 1979). (italics added).

Similarly here, it is entirely lawful, and fair use as a matter of law, for Walker to establish a Group for the purpose of comparing two companies by using their respective marks (by which the companies are readily identified) for the sole purpose of informing potential Group members that the Group's purpose is to compare the entities associated with the marks. It makes no difference if UWM has extensively advertised and promoted its Mark or that the public associates the Mark with UWM's products and services. ECF No. 1, PageID.15 at ¶ 47. Indeed, that is exactly the point. The Mark was *not* being used to cause confusion as to the origin of any good or service; rather, the mark was fairly being used to identify UWM itself and convey that UWM (through its highly identifiable mark) is one of the entities which

is the subject of the Group's discussion.[12]

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Court GRANT Defendants' request to dismiss the Complaint in its entirety with prejudice.

Respectfully submitted,

/s/ Jeffery B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON R. HIRSCH (P58034)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendants
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated: April 15, 2024    jhirsch@morganrothlaw.com

---

[12] Although labeled as a claim for infringement, UWM does not plead one *factual* allegation supporting consumer confusion. ECF No. 1, PageID.13 at ¶ 38. Instead, UWM recites the bare elements of infringement without any factual support by alleging that "Walker's use of UWM's Mark is likely to cause … consumers confusion[.]". This is insufficient as a matter of law and does not meet the *Iqbal/Twombly* pleading standard. *Dugan,* 845 F.Supp.2d at 805; *Iqbal,* 556 U.S. at 684; *Twombly,* 550 U.S. at 556. Even if UWM is alleging dilution of its Mark, such claim also fails as a matter of law. 15 U.S.C. § 1125(c)(3) (advertising or promotion that permits consumers to compare goods or services, or criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner, are not actionable as dilution).

## <u>PROOF OF SERVICE</u>

I hereby certify that on April 15, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the Court's electronic filing system which will send notification of such filing to counsel in this matter registered with the Court's electronic filing system.

MORGANROTH & MORGANROTH, PLLC

/s/ Jason R. Hirsch
JASON R. HIRSCH (P58034)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendants

Dated: April 15, 2024

19