## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED  WHOLESALE  MORTGAGE,
LLC,

        Plaintiff,

v.

MORTGAGE  SOLUTIONS  FCS,  INC.
and RAMON WALKER,

        Defendants.

Case No. 2:24-cv-10376
Hon. Brandy R. McMillion

---

## PLAINTIFF UNITED WHOLESALE MORTGAGE LLC'S
## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................... ii

STATEMENT OF THE ISSUES PRESENTED.................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............v

INDEX OF AUTHORITIES................................................................ vi

INTRODUCTION ..................................................................................1

STATEMENT OF FACTS .....................................................................2

     I.     Mortgage Solutions Breaches the Early Payoffs Provision.
         .................................................................................................3

     II.    Walker's infringement of UWM's Trademark. ...................5

LEGAL STANDARD.............................................................................8

ARGUMENT ..........................................................................................8

     I.     UWM states a plausible breach-of-contract claim relating
         to Mortgage Solutions' failure to pay overdue EPO fees. ...................8

         A.    The EPO provision is in both the 2020 Agreement
             and the 2022 Amendment. ........................................................9

         B.    The Agreement did not require every amendment to
             be in writing signed by both parties.........................................10

         C.    There was sufficient consideration for the 2022
             Amendment. ............................................................................13

         D.    UWM plausibly alleges Mortgage Solutions'
             affirmative agreement to the 2022 Amendment. ......................16

     II.    UWM's trademark-infringement claim under the 15 USC
         § 1114 is plausible..............................................................17

A.   *Rogers* does not shield Walker's improper use of UWM's Mark. ...........................................................................18

B.   Walker's use of UWM's mark is likely to cause confusion. ........................................................................19

C.   Comparative advertising is of no avail to Walker. ...................24

CONCLUSION ......................................................................................25

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether Plaintiff United Wholesale Mortgage, LLC alleges a plausible breach-of-contract claim relating to Defendant Mortgage Solutions FCS, Inc.'s failure to pay "Early Payoffs" fees required by the parties' Correspondent Agreement.

UWM answers:                    Yes.

This court should answer:        Yes.


2.     Whether Plaintiff United Wholesale Mortgage, LLC alleges a plausible trademark-infringement claim under 15 USC § 1114 relating to Defendant Ramon Walker's improper use of UWM's trademarked logo on his personal Facebook profile and in a Facebook Group he created to advertise Defendant Mortgage Solutions FCS, Inc.'s products and services, which is likely to cause the mortgage industry and consumers confusion as to whether UWM authorizes, sponsors, or endorses Walker's products or services or the services UWM provides.

UWM answers:                    Yes.

This court should answer:        Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Adell Broad. v. Apex Media Sales*, 708 N.W.2d 778 (Mich. Ct. App. 2005)

*Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006)

*Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*, 964 N.W.2d 846 (Mich. Ct. App. 2020)

*Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499 (6th Cir. 2023)

*G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.2d 837 (3d Cir. 1983)

*Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140; 143 S. Ct. 1578; 216 L. Ed. 2d 161 (2023)

# INDEX OF AUTHORITIES

## Cases

*Adell Broad. v. Apex Media Sales*, 708 N.W.2d 778 (Mich. Ct. App. 2005) ................................................................................ 14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................8

*Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006) ....................................... passim

*Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*, 964 N.W.2d 846 (Mich. Ct. App. 2020) ....................................................11

*Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499 (6th Cir. 2023) ........................................................ 19, 20, 24

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275 (6th Cir. 1997) ........................................................ 20, 21

*EBC Brakes USA, Inc. v. Teagan*, No. 11-CV-12907, 2013 WL 12181866 (E.D. Mich. Nov. 4, 2013) ....................................................25

*Ford Motor Co. v. Lloyd Design Corp.*, 184 F.Supp.2d 665 (E.D.Mich.2002) ....................................................22

*G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.2d 837 (3d Cir. 1983) ....................................................24

*Gallo v. Moen Inc.*, 813 F.3d 265 (6th Cir. 2016) ....................................................11

*Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190 (Mich. 1999) ....................................................11

*Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140; 143 S. Ct. 1578; 216 L. Ed. 2d 161 (2023) ........................................... 18, 19

*Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683 (E.D. Va. 2020) ....................................................16

*Shirley v. Rocket Mortgage*, No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022) ....................................................16

*SSP Agricultural, Etc. v. Orchard-Rite Ltd.*, 592 F.2d 1096 (9th Cir.1979) ...................................................................................24

*Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491 (Mich. 2001) ........................................................................................12

*Wamer v. Univ. of Toledo*, 27 F.4th 461 (6th Cir. 2022) ...........................................8

*Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003) ................................................................................24

*Woodington v. Shokoohi*, 792 N.W.2d 63 (Mich. Ct. App. 2010) .........................11

*Yerkovich v. AAA*, 610 N.W.2d 542 (Mich. 2000) ..................................................15

## Statutes

MCL § 566.1 ............................................................................. passim

MCL §§ 450.831-849 ...............................................................................16

## Other Authorities

2007 Mich. OAG No. 7207, 2007 WL 2924079 (Oct. 2, 2007) .............................16

## INTRODUCTION

Defendant Mortgage Solutions FCS, Inc. breached its Correspondent Agreement with United Wholesale Mortgage, LLC ("UWM") by failing to reimburse UWM for "Early Payoffs" ("EPO") fees relating to loans that Mortgage Solutions delivered to UWM that were paid off within 180 days of UWM funding the loan. Mortgage Solutions now seeks to dodge a suit on that breach by claiming that the pertinent EPO provision was part of an invalid amendment to the parties' agreement. The Court should rebuff that effort on various grounds. First, whether Mortgage Solutions agreed to any amendment to the Correspondent Agreement is inconsequential to UWM's breach-of-contract claim because the relevant EPO provision is included in both the initial Correspondent Agreement and its subsequent amendment. Second, contrary to Mortgage Solutions' contentions, the Correspondent Agreement did not require all amendments to it to be in a writing executed by both parties. Third, the amended Correspondent Agreement is not voided by MCL § 566.1 because the parties' continued business relationship was sufficient consideration to support the amendment. And finally, UWM plausibly alleges Mortgage Solutions' affirmative agreement to the amended Correspondent Agreement, despite Mortgage Solutions' misunderstanding of UWM's Complaint exhibits.

Defendant Ramon Walker—Mortgage Solutions' founder—also improperly

infringed on UWM's trademarked logo in connection with his Facebook activity on both his personal Facebook profile and in a Facebook group Walker created. UWM states a plausible trademark-infringement claim for Walker's improper use of UWM's logo in connection with its use to advertise Mortgage Solutions' products and services. Walker responds he engaged in free speech, that his use of UWM's logo is not likely to cause confusion, and that he engaged in comparative advertising. Each defense cannot succeed because (1) free speech is not a defense to infringing on a trademark intended to be protected by the Lanham Act, (2) Walker's claim that his use of UWM's logo is not likely to cause confusion is at best a question of fact not proper for the pleading stage and fails to consider the proper factors used to determine a likelihood of confusion, and (3) comparative advertising is not applicable where Walker does not own the competitive trademark he relies on and where comparative advertising is not a defense when a likelihood of confusion is present. Defendants' motion to dismiss should therefore be denied.[1]

## STATEMENT OF FACTS

UWM is a Pontiac, Michigan-based wholesale mortgage lender that works exclusively with independent mortgage brokers and non-delegated correspondent lenders across the country. ECF No. 1 ("Complaint"), PageID.2-3 at ¶ 9. Mortgage

---

[1] In the alternative, UWM requests that the Court grant its Motion for Leave to File a First Amended Complaint to address the grounds raised by Defendants' motion to dismiss.

Solutions is a non-delegated correspondent lender with five offices across the nation and over 200 loan officers. *Id*. at PageID.4, ¶ 13. Walker is Mortgage Solutions' founder. *Id*. at PageID.2, ¶ 3. UWM and Mortgage Solutions began doing business with each other in 2012, when Mortgage Solutions entered a Wholesale Broker Agreement with UWM and elected to avail itself of UWM's products, services, and resources. *Id*. at PageID.5, ¶15; ECF No. 1-1, PageID.18.

## I.   Mortgage Solutions Breaches the Early Payoffs Provision.

In March 2020, Mortgage Solutions elected to become a non-delegated correspondent of UWM and entered into a Correspondent Agreement with UWM ("2020 Agreement"). Complaint at PageID.5, ¶ 16; ECF No. 1-2, PageID.33. The 2020 Agreement was subsequently amended and agreed to by the parties in 2022 ("2022 Amendment"). Complaint at PageID.5, ¶ 16; ECF No. 1-3, PageID.44. The face of the 2022 Amendment reflects that it is an online "Renewal Application – Agreement" from UWM's website pertaining to Mortgage Solutions. ECF No. 1-3, PageID.44. Under the 2020 Agreement and the 2022 Amendment, Mortgage Solutions agreed that it "may from time to time sell to UWM, first and second lien position residential mortgage loans . . . made to individual borrowers . . . in Correspondent's name." ECF No. 1-2, PageID.33; ECF No. 1-3, PageID.44.

The 2020 Agreement and the 2022 Amendment contain nearly identical[2] EPO provisions, where Mortgage Solutions agreed to reimburse UWM if a loan that Mortgage Solutions delivered to UWM under the Correspondent Agreement was paid off within 180 days of funding:

| 2020 Agreement | 2022 Amendment |
| --- | --- |
| **7.16 Early Payoffs.** UWM is committed to the long term performance of its loans. As such, if any Loan delivered hereunder is paid off within one hundred eighty (180) days of the *funding* of such Loan for any reason, then Correspondent shall reimburse UWM for all amounts paid by UWM to the Correspondent in connection with said Loan, or pay UWM one (1%) percent of the amount of the Loan, whichever is greater.<br><br>[ECF No. 1-2, PageID.40 (italics added to note difference between Agreements)]. | **7.16 Early Payoffs.** UWM is committed to the long term performance of its loans. As such, if any Loan delivered hereunder is paid off within one hundred eighty (180) days of the *disbursement date* of such Loan for any reason, then Correspondent shall reimburse UWM for all amounts paid by UWM to the Correspondent in connection with said Loan, or pay UWM one (1%) percent of the amount of the Loan, whichever is greater. . .<br><br>[ECF No. 1-3, PageID.52 (italics added to note difference between Agreements)]. |

From June 2020 through May 2023, at least 12 loans delivered by Mortgage Solutions were paid off within 180 days of disbursement. Complaint at PageID.6, ¶ 18. As of December 1, 2023, Mortgage Solutions carried an EPO balance of at least $124,011.37. *Id.* at ¶ 19. The EPO balance remains unpaid. *Id.* Mortgage Solutions' failure to pay its EPO balance is a breach of the 2020 Agreement and the 2022

---

[2] The minor differences in the EPO provisions are not germane to UWM's allegations that Mortgage Solutions breached the Correspondent Agreement.

Amendment that has caused UWM damage. *Id.* at PageID.6, ¶ 20.

## II.    Walker's infringement of UWM's Trademark.

Mortgage Solutions' founder, Ramon Walker, also improperly used UWM's "UWM UNITED WHOLESLAE MORTGAGE®" trademark ("Mark") to advertise the products and services he and Mortgage Solutions provide as a mortgage broker and correspondent lender. UWM's Mark  is one of the most well-known and highly regarded trademarks in the country. *Id.* at PageID.6-7, ¶ 22. That is because UWM spends millions of dollars and expends significant effort in advertising, promoting, and developing its Mark throughout the country. *Id.* at ¶ 24. As a result of such advertising and expenditures, UWM has established considerable goodwill in the Mark. *Id.* The Mark is widely known and recognized throughout the country as a symbol of UWM's exceptional services, and it is associated by the public exclusively with UWM. *Id.* at ¶¶ 24-25.

Walker uses his personal Facebook profile to advertise the products and services of Mortgage Solutions, d/b/a Client Direct Mortgage. *Id.* at ¶ 26. Walker's personal profile advertises himself as "Founder, Director, CEO at Client Direct Mortgage" and contains various links to his business websites. In addition, his Facebook banner promotes Mortgage Solutions. *Id.* at PageID.8, ¶ 27. Walker also regularly posts to his Facebook profile advertising the products and services of Mortgage Solutions. *Id.* at ¶ 28. On October 28, 2023, Walker used his Facebook

profile to create a Facebook group entitled "Rocket Pro TPO vs UWM." *Id*. at

PageID.9, ¶ 29. Walker used his personal Facebook profile (which advertises his

business) to advertise the Facebook group, which at the time, blatantly displayed

UWM's Mark:



*Id*. at ¶ 30.Walker used his personal Facebook profile to promote the Facebook

group, and his posts also blatantly display UWM's Mark, including in posts designed

to attract new members who would view Mortgage Solutions' advertisements in the

Facebook group:



*Id.* at PageID.10, ¶ 32;  *Id.* at ¶ 33.

UWM did not provide Walker consent to use the Mark in connection with his Facebook profile or the Facebook group. *Id.* at PageID.13, ¶ 36. Regardless, Walker used UWM's Mark in commerce by posting it to his profile and on the Facebook group, which he uses in connection with his advertising of products and services he provides as a mortgage broker and correspondent lender. *Id.* at ¶ 37. Further, Walker's unauthorized use of UWM's Mark in his Facebook profile and the Facebook group has been made public on the internet—and more importantly, to UWM's clients and business partners, which interferes with the relationship between UWM and its brokers, who may be confused or mistaken as to the services UWM provides. *Id.* at ¶ 39. As a result, Walker's use of UWM's Mark is likely to cause the mortgage industry and consumers confusion or to be mistaken or be deceived that

UWM authorizes, sponsors, or endorses Walker's products or services. *Id.* at ¶ 38. Further, Walker's use of UWM's Mark in his Facebook profile and the Facebook group was likely to cause, and did cause, confusion in the mortgage marketplace and among customers of UWM's products and services. *Id.* at ¶ 40.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]  In reviewing such a motion, "a court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022). Under those guidelines, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

## ARGUMENT

**I.    UWM states a plausible breach-of-contract claim relating to Mortgage Solutions' failure to pay overdue EPO fees.**

UWM plausibly alleges that Mortgage Solutions breached the Agreement by failing to pay overdue EPO fees. First, whether Mortgage Solutions agreed to the

---

[3] Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, brackets, and footnotes are omitted.

2022 Amendment is inconsequential to UWM's breach-of-contract claim, because the relevant EPO provision is included in both the 2020 Agreement and 2022 Amendment. Second, the 2020 Agreement did not require all amendments to be in a writing executed by both parties, so the lack of a wet-ink signed document is also of no consequence to UWM's claims. Third, the 2022 Amendment is not voided by MCL § 566.1 because the parties' continued business relationship was sufficient consideration to support the Agreement. And fourth, Mortgage Solutions' quibble about its approval of the 2022 Amendment through UWM's website is, at best, a fact question—nothing about the document submitted with the Complaint contradicts UWM's to-be-accepted-as-true allegations. UWM plausibly alleges that Mortgage Solutions approved (and breached) the 2020 Agreement and 2022 Amendment.

   **A.    The EPO provision is in both the 2020 Agreement and the 2022 Amendment.**

Mortgage Solutions' narrow focus on the "Unsigned Amendment" causes it to miss the forest for the trees. The relevant EPO provision that Mortgage Solutions breached is included in the 2020 Agreement *and* the 2022 Amendment. ECF No. 1-2, PageID.40 at §7.16; ECF No. 1-3, PageID.52 at § 7.16. Mortgage Solutions either ignores or fails to notice this undeniable fact. Regardless, here, UWM plausibly alleges that Mortgage Solutions breached the agreement by failing to pay outstanding EPO fees under either EPO provision. Complaint at PageID.6, ¶¶ 18-20;

*Id.* at PageID.14, ¶¶ 42-45. Indeed, Mortgage Solutions' breaches date back to June 2020, *Id.* at PageID.6, ¶ 18, before the 2022 Agreement was in place. Whether Mortgage Solutions "signed" the 2022 Amendment is therefore inconsequential to UWM's breach-of-contract claim, because the breaches of the 2022 Amendment would constitute breaches of the 2020 Agreement too.[4] Mortgage Solutions' attempt to have UWM's breach-of-contract claim dismissed fails for this reason alone.

**B.     The Agreement did not require every amendment to be in writing signed by both parties.**

Assuming the 2020 Agreement did not contain an EPO provision (it does), the 2020 Agreement did not require *all* amendments to be in a writing executed by both parties. Mortgage Solutions ignores the 2020 Agreement's express language that allows the parties to amend the agreement in other ways.

Indeed, there are multiple ways to amend the 2020 Agreement, not just through a signed writing. Mortgage Solutions' contention that "pursuant to Section 7.01 . . . , any purported 'amendment' of the 2020 Agreement itself is valid *if and only if* it is 'in a writing executed by authorized representatives,'" ECF No. 13, PageID.92-93 (emphasis in original), is demonstrably false. "The words of a contract are interpreted according to their plain and ordinary meaning, and [a] Court gives

---

[4] Mortgage Solutions' attempt to limit the number of breaches by claiming that a number of them preceded the 2022 Amendment fails on this ground too. See ECF No. 13, PageID.92 at n 3.

effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory."[5] *Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*, 964 N.W.2d 846, 852 (Mich. Ct. App. 2020). Section 7.01 of the 2020 Agreement provides that ***"[e]xcept as provided in Section 7.07***, this Agreement may not be amended except in a writing executed by authorized representatives of both Correspondent and UWM." ECF No. 1-2, PageID.39. Thus, by its plain terms, the agreement authorizes ***another*** way—the methods set out in Section 7.07—to effect an amendment that ***does not*** require a signed writing. Mortgage Solutions' assertion that the agreement requires all amendments to be in writing is flat wrong.

The plain language of Section 7.07—indeed the first two words of it— answers whether the 2022 Amendment could plausibly fall within the 2020 Agreement's allowable amendment methods. "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a

---

[5] "[T]he rule that courts should interpret contracts to avoid superfluous words is a tool for dealing with ambiguity, not a tool for *creating* ambiguity in the first place." *Gallo v. Moen Inc.*, 813 F.3d 265, 273 (6th Cir. 2016) (emphasis in original); *see also Henderson v. State Farm Fire & Cas. Co.,* 596 N.W.2d 190, 193 (Mich. 1999) ("[A] court should not create ambiguity . . . where the terms of the contract are clear and precise."). Instead, if a contract "fairly admits of but one interpretation," even if it is perhaps "inartfully worded or clumsily arranged," the contract is unambiguous. *Woodington v. Shokoohi*, 792 N.W.2d 63, 78 (Mich. Ct. App. 2010). Such "clear and unambiguous language" is to be enforced as written, *Bayberry*, 964 N.W.2d at 852, and should not be rewritten "under the guise of interpretation," *Woodington*, 792 N.W.2d at 78 (citing *Henderson,* 596 N.W.2d at 193).

written agreement." *See Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001). Section 7.07 provides:

> **7.07. UWM Amendments & Website.** ***This Agreement*** and the policies, procedures and instructions of UWM, including but not limited to those contained in the UWM Guide, ***may be amended by UWM from time to time upon written notice to the Correspondent of the amendment, which may occur by posting any such amendments on UWM's website, which Correspondent is required to regularly check and monitor as a condition of this Agreement***. ***The Correspondent agrees that submissions to UWM after such notification shall be the Correspondent's agreement to the amendment without further signature or consent of any kind.*** Any such amendment shall apply to pending and/or future submissions by the Correspondent.

ECF No. 1-2, PageID.40. By its plain terms, Section 7.07 applies to UWM amendments to "[t]his Agreement." Sections 7.01 and 7.07 of the 2020 Agreement required amendments be in a writing executed by UWM and Mortgage Solutions *unless* UWM proposes an amendment, UWM gives Mortgage Solutions notice of the terms of that amendment (through the UWM website or otherwise), and Mortgage Solutions then submits mortgage loans to UWM. *Id.* Mortgage Solutions' conduct in such a situation would "be [Mortgage Solutions'] agreement to the amendment *without further signature or consent of any kind*." *Id.*

UWM's allegation that the 2020 "Correspondent Agreement was subsequently amended and agreed to by the parties in 2022," which cites to the 2022 Amendment, falls squarely within the purview of Section 7.07. The face of the 2022

12

Amendment reflects that it is an online "Renewal Application – Agreement" from UWM's website pertaining to Mortgage Solutions. ECF No. 1-3, PageID.44. And UWM alleges that Mortgage Solutions submitted loans through May 2023. Complaint at PageID.6, ¶ 18. The 2022 Amendment posted to UWM's website, along with Mortgage Solutions' subsequent submissions afterwards, constitutes Mortgage Solutions' agreement to the 2022 Amendment under Section 7.07. This, plus the fact that UWM alleges Mortgage Solutions agreed to the 2022 Agreement, which is a clear electronic agreement.

### C.    There was sufficient consideration for the 2022 Amendment.

UWM sufficiently alleges there was adequate consideration for the 2022 Amendment based on the parties' continued relationship after the 2022 Amendment was entered, obviating any application of MCL § 566.1's restrictions. Mortgage Solutions contends that the 2022 Amendment is "void as a matter of law pursuant to [MCL] § 566.1" because "no additional consideration was provided for the purported 'amendment.'" ECF No.13, PageID.93-94. To be sure, this statute requires that oral modifications of written agreements be supported by sufficient consideration. *See* MCL § 566.1. But even if the amendment is considered an oral modification (though it isn't), the parties' continued business relationship is more than enough consideration to support such an amendment to the Agreement.

The decision in *Adell Broad. v. Apex Media Sales*, 708 N.W.2d 778 (Mich.

Ct. App. 2005), is especially instructive. There, the plaintiff broadcast network and the defendant sales company were parties to an agreement under which the defendant was the plaintiff's exclusive media representative for certain broadcast spot and program sales. *Id.* at 780. Toward the end of the parties' relationship, both parties became dissatisfied with various aspects of the relationship. *Id.* As a result, the parties agreed to amend various terms in the agreement and continued working with each other for several months until the relationship faltered again, and the parties terminated the agreement. *Id.* The plaintiff sued on several theories, and the defendant counterclaimed and moved for summary disposition. *Id.* Though the trial court found that there was no consideration for the amended agreement, the Court of Appeals reversed, holding that MCL § 566.1 did not bar the amendment. *Id.* at 780–83. Relevant here, the court noted that "the fact that parties consider it to their advantage to modify their agreement is sufficient consideration" such that "no other consideration for the amended agreement was necessary." *Id.* at 782. Because the defendant "continued to represent" the plaintiff, and the plaintiff (1) "actively contacted potential clients and asked them to deal with" the defendant and (2) did not hire another marketing firm to handle its business, reject business the defendant obtained, or interfere with the defendant's ability to obtain business for the plaintiff, the court further found that "the parties' continuation of their business relationship was consideration for the amended agreement." *Id.* at 782–83. What's more, the

14

Court noted that "a bargained modification to the parties' agreement" like the one presented there did not present "an issue of preexisting duty."[6] *Id.* at 782.

So too here. Mortgage Solutions submitted loans to UWM after notice of the 2022 Amendment's terms, and it also affirmatively acknowledged those terms by renewing with UWM through its online broker-facing portal. Mortgage Solutions' actions constitute its agreement to amend the 2020 Agreement with the 2022 Amendment. ECF No. 1, PageID.5-6, ¶¶ 16, 18; ECF No. 1-3, PageID.44. Mortgage Solutions and UWM both considered it advantageous to modify the 2020 Agreement and continue their business relationship, under which Mortgage Solutions was able to make use of UWM's superior service. ECF No. 1, PageID.4-6, ¶¶ 11-12, 16, 18. Though "[n]o other consideration for the amended agreement was necessary" other than the mere "fact that [the] parties consider[ed] it to their advantage to modify their agreement," the continuation of UWM and Mortgage Solutions' business relationship was even more consideration. *See Adell*, 708 N.W.2d at 782–83. In sum, MCL § 566.1 is of no moment here. The parties' decision to amend the 2020 Agreement with the 2022 Amendment is valid and enforceable.

---

[6] Under the preexisting-duty rule, "doing what one is legally bound to do is not consideration for a new promise." *Yerkovich v. AAA*, 610 N.W.2d 542, 546 (Mich. 2000). The rule bars "the modification of an existing contractual relationship when the purported consideration for the modification consists of the performance or promise to perform that which one party was already required to do under the terms of the existing agreement." *Id.*

**D.** **UWM plausibly alleges Mortgage Solutions' affirmative agreement to the 2022 Amendment.**

Mortgage Solutions' final argument—that the 2022 Amendment attached as Exhibit C to First Amended Complaint is unsigned and undated and thus could not be effective—is a red herring, and any dispute about whether Mortgage Solutions' acceptance of the 2022 Amendment was effective is a fact question not for disposition on a motion to dismiss. The 2022 Amendment is an electronic "Renewal Application – Agreement" that Mortgage Solutions agreed to electronically in 2022 and through its submissions of mortgage loans to UWM under Section 7.07. UWM alleges these facts, which must be accepted as true. ECF No. 1, PageID.5 at ¶ 16. "[M]ost courts have held web browser contracts enforceable where the user had actual or constructive knowledge of the site's terms and conditions, and . . . manifested assent to them." *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 697 (E.D. Va. 2020); *see also Shirley v. Rocket Mortgage*, No. 2:21-cv-13007, 2022 WL 2541123, at *4 (E.D. Mich. July 7, 2022) ("Courts have routinely found 'clickwrap' agreements enforceable because by checking a box explicitly stating 'I agree' in order to proceed, the 'consumer has received notice of the terms being offered and, in the words of the Restatement, 'knows or has reason to know that the other party may infer from his conduct that he assents' to those terms.'").[7] UWM plausibly

---

[7] *See also* MCL §§ 450.831-849 (the "uniform electronic transactions act"); 2007 Mich. OAG No. 7207, 2007 WL 2924079, at *5 (Oct. 2, 2007) (recognizing that the

alleges Mortgage Solutions' online agreement to 2022 Amendment. Mortgage Solutions' focus on Section 7.18 is another red herring, because it states only that it "may" be executed in counterparts and by other methods. Nowhere does Section 7.18 require a signature, as Mortgage Solutions purports. See ECF No. 1-3, PageID.53 ("This Agreement may be executed in one or counterparts. . . [T]his Agreement may be executed via facsimile.").

Mortgage Solutions' attempt to have UWM's breach-of-contract claim dismissed therefore fails because (1) the 2020 Agreement includes the EPO provision, even if it were never amended, (2) the 2020 Agreement does not exclusively require signed amendments, (3) the parties' continued business relationship was sufficient consideration to support the 2022 Amendment, and (4) Section 7.18 does not require a physical signature to be considered an executed agreement.

## II.  UWM's trademark-infringement claim under the 15 USC § 1114 is plausible.

UWM states a plausible trademark-infringement claim for Walker's improper use of UWM's Mark to market the Facebook Group on his personal Facebook profile and in the Facebook group, which both advertise Mortgage Solutions' products and services. Walker's defense that he is engaging in free speech is inapplicable, because

---

act "permits persons to voluntarily conduct business, commercial, or governmental affairs utilizing 'electronic records' and 'electronic signatures'").

free speech is not a defense to infringing on a trademark in a manner protected by the Lanham Act. Further, Walker's claim that his use of UWM's Mark is not likely to cause confusion is at best a question of fact not proper for the pleading stage and also fails under the eight factors courts consider when determining a likelihood of confusion. Lastly, Walker's attempt to claim his use is comparative advertising is of no avail where he does not own the competitive mark he relies on and because comparative advertising is not a defense where a likelihood of confusion is present.

### A.   *Rogers* does not shield Walker's improper use of UWM's Mark.

Walker attempts to cast UWM's trademark-infringement claim as stifling free speech. But he fails because UWM's trademark-infringement allegations are not focused on Walker's discussions regarding UWM.  Rather, his improper use of UWM's Mark is to promote Mortgage Solutions' products and services on his personal Facebook profile and through a Facebook group he uses for business gain. Complaint at PageID.9-13, ¶¶ 29-33 and 37 (Discussing Walker's use of UWM's Mark on his Facebook profile and in the Facebook group to advertise Mortgage Solutions' products and services.) The Supreme Court held that the *Rogers* test does not have "merit" in this context, where "an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 153; 143 S. Ct. 1578, 1587; 216 L. Ed. 2d 161 (2023). That is because *Rogers* "kicks in

when a suit involves *solely* nontrademark uses of a mark—that is, where the trademark is not being used to indicate the source or origin of a product, but only to convey a different kind of message." *Id*. at 156. But when "the use is at least *in part* for source identification—*when the defendant may be trading on the good will of the trademark owner to market its own goods—Rogers* has no proper role." *Id*. And UWM's allegations focus on exactly that: Walker "trading on the good will" of UWM's mark to draw followers to whom he can "market [Mortgage Solutions'] own goods" on his Facebook profile and in the Facebook group. *Id*.; Complaint at PageID.9-13, ¶¶ 29-33 and 37.

## B.  Walker's use of UWM's mark is likely to cause confusion.

Walker's defense that his use of UWM's Mark is not "likely" to confuse consumers and those in the mortgage industry is at best a question of fact. "[D]ismissal for failure to state a claim upon which relief can be granted is appropriate in only the most extreme trademark infringement cases, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact." *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 508 (6th Cir. 2023) (refusing to dismiss trademark infringement claim at pleading stage). Indeed, the use of UWM's Mark is likely to cause the mortgage industry and consumers confusion, including by causing them to mistake or be deceived that UWM authorizes, sponsors, or endorses Walker's Facebook page or Facebook group

on which he promotes the products or services or the services his company, Mortgage Solutions, provides. Complaint at PageID.13, ¶ 39-40.

That "the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties" is plausible pled by UWM. *Bliss*, 82 F.4th at 508. But "evidence of actual confusion is not required to properly plead a claim for trademark infringement." *Id*. at 512. Only "sufficient potential of confusion" must be alleged. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997). Courts use the following eight factors to determine a likelihood of confusion: "(1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing of channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion in selecting the mark." *Audi AG v. D'Amato*, 469 F.3d 534, 542–43 (6th Cir. 2006). These factors weigh heavily in favor of UWM:

1. The strength of UWM's Mark is plausibly alleged and not in question. UWM is the number one overall mortgage lender and purchase lender in the nation and has been the number one wholesale lender for several years. Complaint at PageID.4, ¶ 9. UWM spends millions of dollars and expends significant effort in advertising, promoting, and developing its Mark, resulting in the Mark's considerable goodwill and recognition. The Mark's strength and

distinctiveness entitles it to more protection. *Audi AG*, 469 F.3d at 543 ("[T]he strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore the more protection it is due.")

2. The products and services at issue are undeniably related. Both Mortgage Solutions and UWM are market participants in the mortgage industry. UWM is a mortgage lender and purchase lender. Complaint at PageID.4, ¶ 9. Similarly, Mortgage Solutions is a correspondent lender and that issues mortgage loans to consumers in its name. *Id*. at PageID.5, ¶ 16; *Audi AG*, 469 F.3d at 543 ("[G]oods and services . . . are related [if] they are marketed and consumed such that buyers are likely to believe that the services and goods, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company.")

3. The similarity of the Mark at issue weighs in favor of UWM because Mortgage Solutions used UWM's actual Mark. *Id*. at PageID.9-10, ¶ 30, 32; *Audi AG*, 469 F.3d at 543 ("[T]he marks used by D'Amato on the goods and services sold are undoubtedly similar, for they are, in fact, Audi's actual trademarks.")

4. UWM alleges sufficient potential of confusion, *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 284, where Walker (a) created the Facebook group and posts

that used UWM's mark, Complaint at PageID.9-10, ¶¶ 29-32; (b) used UWM's Mark to market the Facebook Group on his personal Facebook profile and in the Facebook group, which both advertise Mortgage Solutions' products and services, *Id*. at PageID.7-13 at ¶¶ 29-37; and (c) use of UWM's Mark is likely to cause the mortgage industry and consumers confusion as to whether UWM authorizes, sponsors, or endorses Walker's Facebook page or group, which promote Mortgage Solutions. *Id*. at PageID.13 at ¶¶ 38-40; *Audi AG*, 469 F.3d at 543 (Finding likelihood of confusion where each party provided similar goods to consumers). And Walker's reliance on his use of other trademarks or descriptions in connection with his posts is unavailing where they do not absolve his liability for unlawful use of UWM's Mark. *Id*. at 546 ("D'Amato contends that any proof of consumer confusion is rebutted by a disclaimer on his website which stated, 'this page is not associated with Audi GmbH or Audi USA in any way.' [S]uch a disclaimer does not absolve D'Amato of liability for his unlawful use of marks identical to Audi's trademarks."); *Ford Motor Co. v. Lloyd Design Corp.*, 184 F.Supp.2d 665, 673–74 (E.D.Mich.2002) ("The principle that disclaimers are often ineffective is especially applicable when the infringer uses an exact replica of the relevant trademark.")

5. The marketing channels used also favors UWM. This factor considers "the

similarities or differences between the predominant customers of the parties' respective goods or services, and whether the marketing approaches employed by each party resemble each other." *Audi AG*, 469 F.3d at 543. As discussed in factor 2 above, the customers of the parties' services are alike. Further, both Mortgage Solutions and UWM simultaneously engage in internet advertising, which "exacerbates the likelihood of confusion given the fact that entering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership." *Id*. at 544.

6. Consumer care is also unlikely to be exercised to a high degree where a defendant "displayed the [plaintiff's] name and trademark" online to consumers. *Id*.

7. Walker's intent in using UWM's Mark also need not be proved by direct evidence, and may be inferred by the fact that Walker used the Mark with knowledge that it was a protected Mark. *Id*. UWM plausibly alleges that Walker did not have UWM's consent to use the Mark. Complaint at PageID.13, ¶ 36.

8. Finally, "[t]he last factor, likelihood of expansion of product lines, need not be analyzed because the product lines of [UWM] and [Mortgage Solutions]

already overlap." *Audi AG*, 469 F.3d at 545.

Although Walker fails to address any of these factors, each factor weighs in favor of UWM to establish that UWM plausibly pleads that Walker's use of UWM's Mark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Bliss*, 82 F.4th at 508.

### C.      Comparative advertising is of no avail to Walker.

Walker also has no standing to rely on comparative advertising as a defense to UWM's trademark-infringement claim. "Comparative advertising rests on the premise that a competitor's trademark may appear at the same time as the trademark owner's." *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 761 (E.D. Mich. 2003). Walker claims he engages in comparative advertising by using UWM's Mark simultaneously with Rocket Pro TPO's purported trademark. But Walker fails to establish that he owns the Rocket Pro TPO trademark. Comparative advertising and *Wells Fargo* is therefore of no avail to Walker.

Walker also fails to reference that "[t]he use of a competitor's trademark for purposes of comparative advertising is not trademark infringement so long as it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product." *G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.2d 837, 841 (3d Cir. 1983) (citing *SSP Agricultural, Etc. v. Orchard-Rite Ltd.*, 592 F.2d 1096, 1103 (9th Cir.1979));

*EBC Brakes USA, Inc. v. Teagan*, No. 11-CV-12907, 2013 WL 12181866, at *6 (E.D. Mich. Nov. 4, 2013). As established at length above, UWM plausibly alleges that Walker's use of the Mark "create[s] a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of [Walker's] product[s]." *Id.* At the pleading stage, comparative advertising is therefore of no avail to Walker once again.

## CONCLUSION

For the reasons set forth above, UWM respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Complaint. In the alternative, UWM requests that the Court grant its Motion for Leave to File a First Amended Complaint to address the grounds raised by Defendants' motion to dismiss.

Respectfully submitted,

*/s/ Mahde Y. Abdallah*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com
*Attorneys for Plaintiff United Wholesale*
Dated: June 4, 2024          *Mortgage*

25