# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC,

    Plaintiff,

v.

MORTGAGE SOLUTIONS FCS, INC. and RAMON WALKER,

    Defendants.

Case No. 2:24-cv-10376
Hon. Brandy R. McMillion

_____/

| | |
|---|---|
| MOHEEB H. MURRAY (P63893) | JEFFREY B. MORGANROTH (P41670) |
| WILLIAM E. McDONALD III (P76709) | JASON R. HIRSCH (P58034) |
| MAHDE Y. ABDALLAH (P80121) | MORGANROTH & MORGANROTH, PLLC |
| BUSH SEYFERTH PLLC | Attorneys for Defendants |
| Attorneys for Plaintiff | 344 North Old Woodward Avenue, Suite 200 |
| 100 W. Big Beaver Road, Suite 400 | Birmingham, Michigan 48009 |
| Troy, Michigan 48084 | (248) 864-4000 |
| (248) 822-7800 | jmorganroth@morganrothlaw.com |
| abdallah@bsplaw.com | jhirsch@morganrothlaw.com |
| mcdonald@bsplaw.com | |

_____/

# DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF NO. 1] PURSUANT TO <u>FED. R. CIV. P. 12(b)(6)</u>

# **TABLE OF CONTENTS**

**Page**

INDEX OF AUTHORITIES ............................................................................... ii

CONTROLLING AUTHORITY....................................................................... iii

    I.   UWM's Breach of Contract Claim Fails as a Matter of Law ....................1

    II.  UWM's Trademark Infringement Claim Fails as a Matter
        of Law. ........................................................................................................4

PROOF OF SERVICE........................................................................................8

# INDEX OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Adell Broad. Corp. v. Apex Media Sales, Inc.*,
    269 Mich.App. 6 (2005) ...............................................................................4

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*,
    339 F. Supp.2d 944 (W.D. Mich. 2004) ......................................................7

*Day v. Fortune Hi-Tech Mktg.*, No. 10-305-JBC,
    2012 U.S. Dist. LEXIS 130581 (E.D. Ky. Sep. 13, 2012) .............................3

*Down to Earth Organics, LLC v. Efron*,
    2024 U.S. Dist. LEXIS 60825 (S.D.N.Y. Mar. 31, 2024) .............................7

*Jack Daniel's Props. v. VIP Prods. LLC*,
    599 U.S. 140 (2023) .....................................................................................5

*Mattel, Inc. v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002) .......................................................................5

*Rebellion Devs., Ltd. v. Stardock Entm't, Inc.*,
    2013 U.S. Dist. LEXIS 66131 (E.D. Mich. May 9, 2013) ............................6

*Wells Fargo Bank v. Trolley Indus., L.L.C.*, No. 12-CV-12308,
    2013 U.S. Dist. LEXIS 124326 (E.D. Mich. Aug. 30, 2013) .......................3

**Rules**

Mich. Comp. Laws § 566.1.....................................................................................4

# **CONTROLLING AUTHORITY**

**Cases**                                                                                                          **Page(s)**

*Day v. Fortune Hi-Tech Mktg.*, No. 10-305-JBC,
    2012 U.S. Dist. LEXIS 130581 (E.D. Ky. Sep. 13, 2012) ..............................3

*Jack Daniel's Props. v. VIP Prods. LLC*,
    599 U.S. 140 (2023) ......................................................................................5

*Mattel, Inc. v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002) .......................................................................5


**Rules**

Mich. Comp. Laws § 566.1 ...................................................................................4

UWM's brief confirms that this lawsuit is nothing more than a transparent attempt to impede competition and stifle free speech, in the form of any negative opinions about UWM's product offerings as compared to its chief competitor, Rocket Pro TPO. The Court should dismiss this case for failure to state a claim.

## I. UWM's Breach of Contract Claim Fails as a Matter of Law.

Recognizing that it cannot recover under an unsigned agreement, UWM tries to claim breach of an earlier, signed 2020 Correspondent Agreement. But that new theory of liability is found nowhere in its Complaint. To the contrary, the only provision UWM alleges was breached in its Complaint is the Early Payoff provision ("EPO provision") *in the Unsigned Amendment*. ECF No. 1, PageID.5-6 at ¶ 17.[1]

Even if this new theory had been properly pled (and it was not), it would fail out of the starting gate. The EPO provision of the Unsigned Amendment applies to payoffs within 180 days of *disbursement* of a loan. ECF No. 1-3, PageID.52 at § 7.16. By contrast, the EPO provision in the 2020 Correspondent Agreement applies to payoffs within 180 days of the *funding* of a loan. ECF No. 16, PageID.120 at § 7.16. UWM does not allege that any loan was paid off within 180 days of *funding*. ECF No. 1-2, PageID.40 at § 7.16. Instead, its sole allegation of breach is that "loans . . . were paid off within 180 days of *disbursement*." ECF No. 1, PageID.6

---

[1] UWM filed a Motion for Leave to File a First Amended Complaint [ECF No. 17], essentially conceding that its Complaint is deficient. Defendants separately address the Motion for Leave in briefing filed concurrently herewith.

1

at ¶ 18 (emphasis added). As a result, it fails to state a claim under § 7.16 of the signed agreement.

In the alternative, UWM asks this Court to enforce the unsigned agreement, arguing that it was allowed to *unilaterally* impose material new terms on Mortgage Solutions, at any time, pursuant to § 7.07 of the 2020 Correspondent Agreement. In support of this claim, UWM asks this Court to read § 7.01—which expressly requires a signed, written agreement to modify the contract—to apply only when amendments are proposed by Correspondent. ECF No. 1-2, PageID.39 at § 7.01. That proposed construction fails for at least three reasons.

First, it impermissibly seeks to rewrite § 7.01, which, on its face, is not so limited and expressly provides that "this Agreement may not be amended except in a writing executed by authorized representatives of *both* Correspondent and UWM." *Id*.

Second, the plain language of § 7.07 creates only a *limited* exception to the written modification requirement that applies to changes to *the policies, procedures and instructions* governing loan applications. ECF No. 1-2, PageID.40 at § 7.07. The text of § 7.07 makes that intention plain by providing that the amendments it allows "shall apply to pending and/or future submissions by the Correspondent." *Id.*

Third, any reading of § 7.07 that allows UWM to unilaterally make material modifications to the agreement simply by posting notice on its website would render the entire agreement illusory and a nullity. *Day v. Fortune Hi-Tech Mktg.*, No. 10-

2

305-JBC, 2012 U.S. Dist. LEXIS 130581, *6-7 (E.D. Ky. Sep. 13, 2012) (finding "unilateral-amendment provision" rendered "illusory any alleged promise to arbitrate" where notice could be posted to a website), *aff'd by* 536 F. App'x 600, 604 (6th Cir. 2013) ("Because Defendant retained the ability to modify any term of the contract, at any time, its promises were illusory."). In order to "give every term of the contract meaning," this Court should reject UWM's expansive reading of § 7.07. *See Wells Fargo Bank v. Trolley Indus., L.L.C.*, No. 12-CV-12308, 2013 U.S. Dist. LEXIS 124326, at *23-24 (E.D. Mich. Aug. 30, 2013) ("This court is obligated to give every term of the contract meaning and Defendants' interpretation would render the above quoted provision a nullity."). But, to the extent it adopts UWM's construction, the Court should find that UWM's promises under the agreement were illusory, rendering the entire agreement unenforceable.

It is undisputed that Mich. Comp. Laws § 566.1 requires consideration to make a an unwritten modification operative. But UWM can point to nothing other than the parties' continued business relationship as offering any kind of consideration here. ECF No. 16, PageID.129. Adoption of that position would gut the requirements of Michigan law by effectively requiring termination of the parties' business relationship whenever an unwanted modification is suggested without consideration. That is not and should not be the law. To the contrary, "[t]he general rule is that … the performance of an existing legal obligation[] does not constitute … sufficient

consideration[] for a contract." 17 Am Jur 2d, Contracts, § 119, p. 465.

Contrary to UWM's arguments, *Adell Broad. Corp. v. Apex Media Sales, Inc.*, 269 Mich.App. 6, 11 (2005) , does not support its position nor hold that the mere continuation of an *existing* business relationship is sufficient consideration for an unwritten contract modification. The parties in *Adell* had "waived certain terms of their original agreement in a *signed writing*," evidencing mutual assent for the modification. *Id*. (emphasis added). And both parties there "considered the changes to their advantage," with the amendment resolving grievances on both sides. *Id.* Here, there was no mutual assent to the Unsigned Amendment, nor any separate consideration provided in violation of Mich. Comp. Laws § 566.1.

UWM next claims that the Unsigned Amendment was approved electronically and through the submission of mortgage loans. ECF No. 16, PageID.132. But the Unsigned Amendment (Exh. C to the Complaint), on its face, requires a signature in order to be valid. And § 7.18 lists the methods by which the agreement may be executed, which do *not* include "clickwrap." ECF No. 1-3, PageID.53 at § 7.18 (allowing "execut[ion] via facsimile, electronic mail or electronic signature.").

**II. UWM's Trademark Infringement Claim Fails as a Matter of Law.**

UWM's defense of its trademark claim fares no better.  It is clear from the Complaint and UWM's briefing that its chief complaint with the challenged Facebook group has nothing to do with the use of UWM's trademark, but rather with

4

the negative opinions about UWM's product offerings voiced by some of the participants. ECF No. 1, PageID.12 at ¶ 35 (complaining that "the main prerogative of the group seems to be to undermine UWM's business"). The use of UWM's trademark in connection with such discussions, however, is decidedly fair use.

"[T]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002) (citation omitted)**.** Accordingly, as numerous courts have held, the *Rogers* test "kicks in when . . . the trademark is not being used to indicate the source or origin of a product, but only to convey a different kind of message." *Jack Daniel's Props. v. VIP Prods. LLC*, 599 U.S. 140, 156 (2023) (internal quotation marks omitted). Here, it is plain from the face of the Complaint that Defendants did not use UWM's trademark as a mark indicating the source or origin of any product or service. In fact, the Facebook Group is *not* selling any products or services at all. Instead, the mark is used in connection with creating a forum for "honest and uninfluenced conversations" comparing the product offerings of two competing mortgage lenders—UWM and Rocket TPO Pro. ECF No. 1, PageID.12 at ¶ 35. And the "'fair' use exclusion specifically covers [such] uses [as] 'parodying, criticizing, or commenting upon' a famous mark owner." *Jack Daniel's*, 599 U.S. at 162 (quoting §1125(c)(3)(A)(ii)).

No reasonable consumer could be confused about the origin or endorsement of

the discussion on this Facebook page, particularly where every comment is directly attributed to a particular user, and not to UWM. *See, e.g.*, ECF No. 1, PageID.11-12 at ¶¶ 32- 35. It is implausible that an online discussion comparing *UWM* and *another mortgage lender (Rocket Pro)* could somehow confuse Facebook users into thinking that the negative statements made about UWM were actually endorsed by the company. The fact that Mortgage Solutions (which is not even referenced as part of the Facebook Group) participates in the mortgage industry does nothing to change this simple, common-sense fact. ECF No. 16, PageID.137 at ¶ 35.[2]

Contrary to UWM's position, the *Rogers* Test is regularly applied at the pleading stage, and it requires dismissal of UWM's trademark claim here. *See, e.g.*, *Rebellion Devs., Ltd. v. Stardock Entm't, Inc.*, 2013 U.S. Dist. LEXIS 66131, *2 (E.D. Mich. May 9, 2013) ("The Court finds that the *Rogers* test is controlling. Plaintiffs cannot satisfy either prong of the *Rogers* test in order to survive this motion to dismiss.").

"Because there [is] no likelihood of confusion as to the source of the products, it [is] 'unnecessary for the district court to examine the eight factors traditionally used to determine likelihood of confusion between two source-signifying marks.'" *Id*. at *2 (citation omitted). In any event, UWM does not allege any facts to plausibly suggest that Walker used the Mark to mislead the public as to the source of any

---

[2] While UWM alleges that Walker *separately* advertises the services of Mortgage Solutions within the Facebook Group, UWM does *not* allege that any of the advertisements make use of UWM's mark. ECF No. 1, PageID.10 at ¶ 33.

6

services. Instead, it baldly alleges that "Walker's use of UWM's Mark is *likely* to cause the mortgage industry and consumers confusion or to mistake or be deceived that UWM authorizes, sponsors, or endorses Walker's goods or services," ECF No. 1, PageID.13 at ¶¶ 38, 39 (emphasis added), while providing no *facts* plausibly supporting that conclusion. That type of conclusory pleading is insufficient to survive a motion to dismiss. *Down to Earth Organics, LLC v. Efron*, 2024 U.S. Dist. LEXIS 60825, *21-22 (S.D.N.Y. Mar. 31, 2024) (noting that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and dismissing where the plaintiff's conclusory allegations were insufficient to state a plausible claim of likelihood of confusion, much less a "particularly compelling" one (citations omitted)). [3]

|  | Respectfully submitted, |
|---|---|
|  | /s/ Jeffery B. Morganroth<br>JEFFREY B. MORGANROTH (P41670)<br>JASON R. HIRSCH (P58034)<br>MORGANROTH & MORGANROTH, PLLC<br>Attorneys for Defendants<br>344 North Old Woodward Avenue, Suite 200<br>Birmingham, Michigan 48009<br>(248) 864-4000<br>jmorganroth@morganrothlaw.com |
| Dated: June 18, 2024 | jhirsch@morganrothlaw.com |

---

[3] Because the Mark was used only to identify UWM as a subject of debate and public discourse, the use is also protected as "nominative fair use." ECF No. 1, PageID.9-10 at ¶¶ 30, 32; *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp.2d 944, 963 (W.D. Mich. 2004) (citation omitted) (defining "nominative fair use" as use of a mark to describe the *plaintiff's product* rather than one's own).

7

## **PROOF OF SERVICE**

I hereby certify that on June 18, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the Court's electronic filing system which will send notification of such filing to counsel in this matter registered with the Court's electronic filing system.

                                    MORGANROTH & MORGANROTH, PLLC

                                    /s/ Jason R. Hirsch
                                    JASON R. HIRSCH (P58034)
                                    MORGANROTH & MORGANROTH, PLLC
                                    Attorneys for Defendants

Dated: June 18, 2024