## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE,
LLC,

       Plaintiff,

v.

MORTGAGE SOLUTIONS FCS, INC.
and RAMON WALKER,

        Defendants.

_____/

Case No. 24-cv-10376

Hon. Brandy R. McMillion

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT (ECF NO. 17) AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS (ECF NO. 13)

Plaintiff United Mortgage Wholesale, LLC ("UWM") filed this action against Defendants Mortgage Solutions FCS, Inc. ("MS") and Ramon Walker ("Walker") (collectively, "Defendants") for breach of contract (as to MS) and trademark infringement (as to Walker). *See generally* ECF No. 1. On April 15, 2024, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6). ECF No. 13. On June 4, 2024, UWM filed its response to the Motion to Dismiss (ECF No. 16) as well as a Motion for Leave to File a First Amended Complaint (ECF No. 17). The Motion for Leave to Amend has been fully briefed. ECF Nos. 18, 20. Defendants also filed a Supplemental Brief in support of their Motion to Dismiss. ECF No. 19.

Having reviewed the parties' briefs, the Court finds oral argument unnecessary and will decide the motion based on the record before it. *See* E.D. Mich. LR 7.1(f). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** UWM's Motion for Leave to Amend (ECF No. 17) and **DENIES AS MOOT** Defendant's Motion to Dismiss (ECF No. 13).

## I.

UWM is a wholesale mortgage lender that works with non-delegated correspondent lenders (referred to by UWM as "Broker Partners"). ECF No. 17-1, PageID.157-158. These Broker Partners communicate directly with borrowers and help them select the loan product they believe is the best fit for the borrower. *Id.* at PageID.158. UWM provides their Broker Partners "considerable resources, including technology, marketing materials, compliance support, training, and more to help the Broker Partners compete, win, and grow their business." *Id.*

MS's Breach of the Correspondent Agreement and Amendments

MS is one of UWM's Broker Partners. *Id.* UWM and MS's business relationship began in 2012 when they entered a Wholesale Broker Agreement. *Id.* at PageID.159. The subject of UWM's Breach of Contract claim, however, is the Correspondent Agreement they entered in 2020 (the "2020 Correspondent Agreement"). *Id.* In the 2020 Correspondent Agreement, MS agreed to sell "from time to time . . . to UWM, first and second lien position residential mortgage loans .

2

. . made to individual borrowers . . . in [MS's] name." *Id.* at PageID.159. The 2020 Correspondent Agreement was amended twice: once in 2021 (the "2021 Amendment") and once in 2022 (the "2022 Amendment") (collectively, the "Amendments").[1]

Both the 2020 Correspondent Agreement and the Amendments have a provision that required MS to "reimburse UWM if a loan that MS delivered to UWM under the [Agreements] was paid off within 180 days." *Id.* at PageID.161. As of December 1, 2023, MS had not reimbursed UWM for the loans that fell within this provision and thus owed UWM a "balance of at least $124,011.37." *Id.*

Ramon Walker's Infringement of UWM's Trademark

Ramon Walker is the "Founder, Director, [and] CEO at Client Direct Mortgage," also known as "Mortgage Solutions." *Id.* at PageID.163. UWM alleges that MS is partners with Rocket Pro TPO. *Id.* at PageID.164. Walker "uses his Facebook profile to advertise the goods and services of" his company. *Id.* He used this Facebook profile to create the "Rocket Pro TPO vs. UWM" Facebook page. *Id.* at PageID.165. Walker advertises the group with an image that contains UWM's trademark—a use that UWM alleges it did not authorize. *See id.* at PageID.165,

---

[1] The parties disagree as to whether the amendments are valid (*see* ECF No. 18, PageID.230-234; ECF No. 20, PageID.252-257), but for the purposes of this Motion the Court takes all factual matters as alleged by UWM as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

3

168.   Walker also advertises for Mortgage Solutions within the group through posts and comments.  *See id.* at PageID.166-167.

## II.

Rule 15(a) states that leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a).  "It should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (cleaned up).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Courts should grant leave to amend unless there is an "apparent or declared reason" not to.  *Id.*  Courts rely on six factors when deciding whether to deny leave to amend: (1) "undue delay in filing"; (2) "lack of notice to the opposing party"; (3) "bad faith by the moving party"; (4) "repeated failure to cure deficiencies by previous amendments"; (5) "undue prejudice to the opposing party; and (6) futility of the amendment."  *See id.; see also Orleans Int'l Inc. v. Alterna Cap. Sols.*, 615 F. Supp. 3d 641, 646 (E.D. Mich. 2022) (citing *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001)).  Futility means: "where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment."  *Thiokol Corp. v. Dep't of Treasury, State of Mich.*, *Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993).

In reviewing a 12(b)(6) motion to dismiss, the Court "accept[s] all of the complaint's factual allegations as true and determine[s] whether these facts sufficiently state a plausible claim for relief." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Courts "must 'construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (citations and internal quotation marks omitted). Facial plausibility requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III.

UWM seeks to amend its complaint to both (1) further detail and clarify its breach of contract claim, and (2) clarify its trademark infringement claim. *See* ECF No. 17, PageID.146. In response, Defendants argue that leave to amend should be denied because UWM has acted in bad faith and that, even if amendment were allowed, the First Amended Complaint ("FAC") would be dismissed under Rule 12(b)(6) and is therefore futile. *See generally* ECF No. 18.

### A. Undue Delay and Bad Faith[2]

Defendants argue that UWM brought its request to file an amended complaint in bad faith because it waited to file this motion until the deadline to respond to Defendants' Motion to Dismiss, a deadline that was extended twice. *See* ECF Nos. 14, 15. Further, Defendants argue that UWM acted in bad faith by concurrently filing this motion with its response to the Motion to Dismiss and "thereby unduly burdening both [MS] and this Court with dueling motions addressing largely the same issues." ECF No. 18, PageID.230.

UWM points out that the extensions were granted under the parties' stipulation. ECF No. 20; *see also* ECF Nos. 14, 15. UWM also argues that, although this motion was filed past the 21 days for a party to amend its complaint as a matter of course, it was similarly filed in response to an opposing party's motion under Rule 12(b) (albeit under an extended schedule). ECF No. 17, PageID.150; *see also* Fed. R. Civ. P. 15(a)(1)(B). UWM also argues that its motion cannot be untimely because "Rule 15(a)(2) does not have a time limit" and because it "moved for leave early in this action." ECF No. 20, PageID.257-258.

---

[2]  Although Defendants refer to these as bad faith arguments, the Court also understands its argument to also touch on undue delay. *See, e.g.*, ECF No. 18, PageID.228 ("Plaintiff stalled and delayed filing this Motion"); *see also id.* at 230. The Court will therefore address both factors here.

6

The Court finds Defendants' arguments unpersuasive.  Although prolonged amendments of complaints may make for bad practice, "[o]rdinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).  When deciding whether the delay was undue, courts look to how long the filing is delayed relative to how far the case has advanced procedurally.  *See Gooding v. EquityExperts.org, LLC*, No. 17-12489, 2020 WL 13441663, at *2 (E.D. Mich. Jan. 9, 2020) (holding there was no undue delay even though it had been over a year since the complaint had been filed because procedurally the case had not advanced due to both parties' delay in entering a scheduling order and stipulating to staying the case).  UWM's request here is not like those cases where courts have denied motions to amend that were received on the eve of trial.  *See, e.g.*, *Lotus Indus., LLC v. City of Detroit*, No. 2:17-CV-13482, 2019 WL 13199721 (E.D. Mich. May 15, 2019) (denying a motion to amend that was filed a year-and-a-half after the complaint was first filed and after significant discovery had taken place).  UWM's motion comes at a reasonable time considering the parties' stipulated extensions and within a reasonable time relative to the procedural posture of this case.  The Court finds no reason to deny UWM's Motion to Amend on the grounds of undue delay.

However, the Court agrees UWM's amendment is partially made in bad faith. Typically, courts will deny leave to amend for bad faith when it is clear the party is seeking to amend as an exercise in gamesmanship or to protract proceedings.  For

example, in *Lotus Industries, LLC v. City of Detroit*, this Court denied leave to amend a complaint when the plaintiff's "sole justification for his proposed amendment" was his realization that he could not seek to compel certain financial records in discovery. 2019 WL 13199721, at *1. The plaintiff's motion to amend came in response to a ruling from the magistrate judge, who had denied his motion to compel these financial records because the "complaint did not request punitive damages." *Id.* Such clear attempts to manipulate the discovery process amounted to bad faith. *Id.; see also Indus. Assets, Inc. v. Cap. Equip. Sales Co.*, 116 F.3d 1480 (6th Cir. 1997) ("[A]ssertion of improper claims in order to gain a tactical advantage may constitute bad faith justifying denial of leave to amend.").

Particularly instructive on the issue of amending in bad faith is *Kott v. Howmedica Osteonics Corp.,* No. 15-CV-11349, 2015 WL 13037419 (E.D. Mich. Oct. 13, 2015). Typically, courts do not consider seeking to amend a complaint in response to a motion to dismiss an exercise of bad faith. *Chkrs, LLC v. City of Dublin, Ohio*, No. 2:18-CV-1366, 2019 WL 3975447, at *11 (S.D. Ohio Aug. 22, 2019). In fact, "the most common use of Rule 15(a) is by a party seeking to amend in order to cure a defective pleading." 6 Charles Alan Wright and Arthur Miller, Fed. Prac. & Proc. Civ. § 1474 (3d ed. 2019). However, in *Kott*, this Court denied leave to amend where a plaintiff sought to remove allegations to avoid dismissal on statute of limitation grounds. 2015 WL 13037419 at *7. The court found improper

that the purpose of the amendment was "to remove or alter otherwise dispositive facts from the complaint in order to survive a motion to dismiss. *Id.* As the court held: "[t]he amendment would, at best, unnecessarily extend this litigation until summary judgment, when the Court would again be required to hold the same claims time-barred under the relevant statutes of limitations." *Id.*

Defendants suggest, and the Court agrees, that UWM seeks to amend its complaint—specifically, its trademark infringement claim—for this bad faith purpose. *See* ECF No. 18, PageID.234-235 ("[T]he only substantive change to [the trademark infringement] claim appears to be the *deletion* of Paragraph 35 [of the Complaint] . . . . This deletion serves as a tacit concession that these facts are fatal to UWM's trademark infringement claim . . . ."). The Court finds suspicious that one of the only changes to the trademark infringement claim is the deletion of paragraph 35 of the Complaint. *Compare* ECF No. 1, PageID.12 *with* ECF No. 17-1, PageID.168.[3] Paragraph 35 of the Complaint states: "[W]hile the Facebook group is entitled 'Rocket Pro TPO vs. UWM' and its 'About' section describes the group as a 'place where honest and uninfluenced conversations can take place,' the main prerogative of the group seems to be to undermine UWM's business, which Walker condones[.]" ECF No. 1, PageID.12. UWM argues that its changes to the trademark

---

[3] The only other change is a small addition to ¶32 of the Complaint: the FAC adds "including on posts to solicit more members for the group, which promotes Mortgage Solutions." *Compare* ECF No. 1, PageID.10 *with* ECF No. 17-1, PageID.166.

infringement claim were to clarify that it opposes Walker's "improper use of [the UWM trademark] to market the Facebook Group . . . which advertises Mortgage Solution's products and services" and not any permissible criticism of UWM therein. ECF No. 17, PageID.152; ECF No. 20, PageID.257. Yet the removed paragraph seems to admit the opposite. Moreover, the paragraph undermines UWM's trademark infringement claim: The paragraph lessens the likelihood of consumer confusion as to whether UWM "sponsored or otherwise approved the use of the trademark." *See infra* Section III.B.2, p. 14 (discussing elements of a trademark infringement claim, including, likelihood of consumer confusion); *see also DayCab Company, Inc. v. Prairie Technology, LLC*, 67 F.4th 837, 851 (6th Cir. 2023).

The Court disagrees that inclusion of this paragraph would be as fatal to the trademark infringement claim as Defendants suggest. Nevertheless, the Court agrees that UWM's attempt to amend by removing the paragraph is as obviously a bad faith attempt to avoid dismissal as the *Kott* plaintiff's attempt to remove facts demonstrating his claim was time-barred. The Court, therefore, **DENIES** UWM's motion to amend as to its trademark infringement claim (Count II) because it finds UWM sought to amend this claim in bad faith.

## B. Futility

An amendment is futile if the complaint "after including the proposed changes" could not survive a motion to dismiss. *Greer v. Strange Honey Farm, LLC*,

10

114 F.4th 605, 617 (6th Cir. 2024).   The FAC alleges two causes of action: (1) Breach of Contract and (2) Trademark Infringement under 15 U.S.C. § 1114.   The Court will consider each in turn.

### 1. *Breach of Contract*

To state a claim for breach of contract under Michigan law, a party "must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach."   *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (2014); *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423 (6th Cir. 2018).   The first element must be established first.   *Becker Metal Works, Inc. v. Genworth Life & Annuity Ins. Co.*, 705 F. Supp. 3d 827, 830 (E.D. Mich. 2023).

A valid contract requires five elements: "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."   *Michaelian v. Lawsuit Fin., Inc*., No. 17-13321, 2019 WL 1281953, at *8 (E.D. Mich. Mar. 20, 2019) (quoting *Innovation Ventures v. Liquid Manufacturing*, 885 N.W.2d 861, 871 (Mich. 2016)).   The parties do not dispute that the 2020 Correspondent Agreement is a valid contract.   Rather, Defendants argue that the two amendments to this contract—the 2021 Amendment and the 2022 Amendment—are invalid because (1) they are not in writing as required by § 7.01 of the 2020 Correspondent Agreement nor fall within the limited exception to the

11

writing requirement under § 7.07 of the 2020 Correspondent Agreement and (2) they were not supported by sufficient consideration.  ECF No. 18, PageID.231-234.

But the Court need not reach the question of whether the amendments are valid.  *Cf. Frisch v. Nationwide Mut. Ins. Co.*, 553 F. App'x 477 (6th Cir. 2014).  The conduct which forms the basis of the breach falls under a provision that is included in nearly identical language of both the 2020 Correspondent Agreement and the Amendments.  Because the parties do not dispute the validity of the 2020 Correspondent Agreement, the relevant provision is valid even if this Court were to agree with Defendants' argument that the Amendments are not valid contracts.

The provision as written in the 2020 Correspondent Agreement states in relevant part:

> **7.16 Early Payoffs**.  UWM is committed to the long term performance of its loans.  As such, if any Loan delivered hereunder is paid off within one hundred eighty (180) days of the *funding* of such Loan for any reason, then Correspondent shall reimburse UWM for all amounts paid by UWM to the Correspondent in connection with said Loan, or pay UWM one (1%) percent of the amount of the Loan, whichever is greater.

ECF No. 17-1, PageID.195 (emphasis added).  This same provision is included in both Amendments, though with one change: instead of the Early Payoff provision applying to any loan that is "paid off within one hundred eighty (180) days of the *funding* date" the amended language applies to any loan that is "paid off within one

hundred eighty (180) days of the *disbursement* date."  *Compare* ECF No. 17-1, PageID.195 *with* ECF No. 17-1, PageID.205, 217.

UWM's proposed FAC alleges that MS breached the contract when it failed to pay its Early Payoffs balance that resulted from the "at least 12 loans" that were paid off "within 180 days of disbursement."  ECF No. 17-1, PageID.161.  This, as the FAC alleges, resulted in damages of "at least $124,011.37."  ECF No. 17-1, PageID.161.  While this clearly alleges damages and breach as to the Amendments, Defendants hang on UWM's use of "disbursement" instead of "funding" to argue that UWM's proposed FAC does not adequately plead breach as to the 2020 Correspondent Agreement.  *See* ECF No. 19, PageID.241.  Therefore, Defendants argue, the FAC would not survive a Rule 12(b)(6) challenge.  *Id.*  In contrast, UWM argues this is "a distinction without a difference" because "'funding' and 'disbursement' both pertain to the date a consumer's loan was provided to a title company at closing."  ECF No. 20, PageID.253.  To survive a motion to dismiss under 12(b)(6), Plaintiff need only include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Construing the FAC in the light most favorable to UWM, the Court finds UWM's FAC adequately pleads breach by alleging that MS did not pay the Early Payoffs balance required by the 2020 Correspondent Agreement.  To that end, because the

FAC could survive a Rule 12(b)(6) motion, the Court finds the proposed amendments to this claim are not futile.

### 2. *Trademark Infringement*[4]

"The essence of the wrong of trademark infringement is the passing off of the goods of one as those of another." *Beer Nuts, Inc. v. King Nut Co.,* 477 F.2d 326 (6th Cir. 1973) (citing *Hemmeter Cigar Co. v. Congress Cigar Co.*, 118 F.2d 64 (6th Cir. 1941)). To survive a motion to dismiss a plaintiff alleging trademark infringement must show that: "(1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Libertarian Nat'l Comm., Inc. v. Saliba*, (6th Cir. 2024) (citing *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009)).

Here, the parties do not dispute that UWM adequately alleges trademark ownership; and the Court agrees. *See* ECF No. 17-1, PageID.162. Rather, as a threshold matter, the parties disagree as to whether Walker's use of the mark falls within the scope of the Lanham Act at all. Defendants argue that because Walker's use of the mark is expressive speech protected by the First Amendment, his use trumps UWM's trademark rights. *See* ECF No. 13, PageID.97-99. In retort, UWM

---

[4] The Court has already **DENIED** UWM's Motion to Amend as it pertains to the trademark infringement claim on a finding of bad faith. In light of the arguments made in Defendants' outstanding Motion to Dismiss (ECF No. 13), the Court will also discuss what is required for a trademark infringement claim to survive a 12(b)(6) motion.

argues that its trademark infringement claim is not "focused on Walker's discussions regarding UWM" but rather on Walker's "improper use of UWM's Mark [] to promote Mortgage Solutions' products and services"—a use prohibited by the Lanham Act.  ECF No. 16, PageID.134.

The Sixth Circuit has expressly adopted the *Rogers*[5] test as a means of balancing the First Amendment interests of defendants and the trademark interests of plaintiffs.  *See generally Parks v. LaFace Recs.*, 329 F.3d 437 (6th Cir. 2003). The *Rogers* test is a "threshold test" designed to "protect expressive works." *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 151 (2023) (discussing the *Rogers* test).  As explained by the Supreme Court, when expressive works are involved:

> [The] *Rogers* test requires *dismissal of an infringement claim at the outset* unless the complainant can show one of two things: that the challenged use of a mark "has no artistic relevance to the underlying work" or that it "explicitly misleads as to the source or the content of the work."

*Id.* (citing *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)) (emphasis added).  The Supreme Court limited the *Rogers* test in *Jack Daniel's,* holding that when "when trademarks are used as trademarks—i.e., to designate source," *Rogers* does not apply. *Jack Daniel's*, 599 U.S. at 155.  This is true even where "the use of a mark has other expressive content" on top of source-identification.  *Id.* at 157.  "For those

---

[5] *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).

uses," the Supreme Court held that, "the likelihood-of-confusion inquiry does enough work to account for the interest in free expression." *Id.* at 159.

Other Sixth Circuit caselaw suggests that the relevant First Amendment inquiry is captured by whether the expressive use of the mark is "in connection with the sale . . . or advertising of any goods or services"—the second element of a trademark infringement claim. *See Taubman Co. v. Webfeats,* 319 F.3d 770 (6th Cir. 2003) (holding the defendant's use of trademark as "purely an exhibition of Free Speech" because it was not used "in connection with the sale of goods"); *see also Saliba*, 116 F.4th at 534 (describing *Taubman* as discussing "the interplay between the First Amendment and the Lanham Act in the context of a defendant's use of a trademark to discuss and critique the trademark's owner."). *Taubman* suggests that even "extremely minimal" advertising is sufficient to put an otherwise expressive non-commercial site within the realm of trademark law and outside the protections of the First Amendment. *Taubman*, 319 F.3d at 775 ("We believe the advertisements on [the defendant's] site, though extremely minimal, constituted his use of [the] mark 'in connection with the advertising' of the goods sold by the advertisers.").

Read together, the Court finds that unless the mark is used in works "*purely for protected expression*" any threshold dismissal of the infringement claim is inappropriate. *Saliba*, 116 F.4th at 535 (emphasis added). Here, the FAC adequately alleges facts demonstrating the "Rocket Pro TPO vs UWM" Facebook Group was

16

not purely expressive.  *See* ECF No. 17-1, PageID.167-168 (alleging that Ramon Walker used the UWM mark in the "Rocket Pro TPO vs UWM" Facebook Group to advertise for MS).  Further, because the extent of the advertisements allegedly made in the Facebook Group far exceed those in *Taubman,* the Court also finds the second element of an infringement claim sufficiently pleaded to survive dismissal.  *Cf. Taubman*, 319 F.3d at 775 (holding two links—one to the website for his girlfriend's blouse company and the other to his own site for his web design company— sufficient to put the site within the purview of the Lanham Act).

As a result, all that remains to survive a motion to dismiss is whether UWM adequately pleaded likelihood of confusion and, if so, whether the claim would nonetheless be dismissed because Walker's use of the mark constitutes fair use.

Likelihood of Confusion:

In this circuit, "likelihood of confusion is whether an ordinary consumer would confuse the products at issue, incorrectly assuming that the products derive from one source rather than from different sources."  *DayCab Company, Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 851 (6th Cir. 2023).  "The general concept underlying the likelihood of confusion is that the public believe that the [trademark] owner sponsored or otherwise approved the use of the trademark."  *Id.*

The parties disagree as to whether Walker's use of the mark is likely to cause confusion.  *See* ECF No. 16, PageID.135-140; ECF No. 13, PageID.100-101.

17

Defendants argue that there is no likelihood of confusion because it is "clear" that the "purpose of the [Facebook] Group is to compare UWM and Rocket Pro TPO." ECF No. 13, PageID.101.  UWM, on the other hand, argues that use of its mark is likely to cause customers to "mistake or be deceived that UWM authorizes, sponsors, or endorses Walker's Facebook page or Facebook group on which he promotes the products or services or the services his company, Mortgage Solutions, provides." ECF No. 16, PageID.136.  UWM also argues that likelihood of confusion is generally a question of fact, and, as such, that "dismissal for failure to state a claim . . . is appropriate in only the most extreme trademark infringement cases, such as where the goods are unrelated as a matter of law . . . ."  ECF No. 16, PageID.135 (quoting *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 508 (6th Cir. 2023)).  The Court agrees with UWM.

In a "usual trademark case," likelihood of confusion is evaluated through an eight-factor inquiry.  *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429, 432 (6th Cir. 2017); *see also Interactive Prod. Corp. v. a2z Mobile Off. Sols., Inc.,* 326 F.3d 687 (6th Cir. 2003) ("In the usual trademark case, the defendant is using a mark to identify its goods that is similar to the plaintiff's trademark."). This inquiry is "generally a question of fact that is inappropriate to resolve at the motion-to-dismiss stage."  *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 613 (6th Cir. 2009)*.*  That said, in the Sixth Circuit there is also a threshold question: whether

the defendants are only using the trademark in a "non-trademark" way.  *Id.*
Trademarks are first and foremost source identifiers. *Jack Daniel's*, 599 U.S. at 157.
If the mark is not being used "to identify the source of a product," then "trademark
infringement laws, along with the eight-factor analysis, do not even apply." *Hensley,*
579 F.3d at 610; *see also Oaklawn Jockey Club, Inc.*, 687 F. App'x at 432.  And
when the mark is not being used as an identifier, the infringement claim may be
dismissed. *See Hensley*, 579 F.3d at 611.

The Sixth Circuit has dismissed trademark infringement claims pursuant to
the "non-trademark use" rule where the defendant used the trademark in its
descriptive sense. *See Oaklawn Jockey Club, Inc.*, 687 F. App'x at 429 (holding that
use of Track Owners' trademark was not infringement when used to describe that
the race was at the Track Owners' track); *Rupp v. Courier-J., Inc.*, 839 F. App'x
1003 (6th Cir. 2021) (using "Welcome to the D" to describe Detroit was not
trademark infringement where message was used as a greeting and not a source
identifier and Detroit is commonly referred to as "the D").[6]  Here, Defendants are
not using UWM's mark in a descriptive sense; they are using UWM's mark to
identify UWM.  Accepting UWM's factual allegations in the FAC as true, Walker's

---

[6] *See also Kassa v. Detroit Metro. Convention & Visitors Bureau*, 672 F. App'x 575 (6th Cir.
2017); *Kalamata IP, LLC v. First Watch Restaurants, Inc.,* No. 2:19-CV-13534, 2020 WL
3961482, at \*2 (E.D. Mich. July 13, 2020); *Heaven Hill Distilleries, Inc. v. Log Still Distilling,
LLC*, 575 F. Supp. 3d 785 (W.D. Ky. 2021); *McKeon Prod., Inc. v. SureFire, LLC*, No. 2: 22-CV-
11771-TGB-JJCG, 2023 WL 6397754 (E.D. Mich. Sept. 29, 2023).

use of the UWM mark is not so unlikely to confuse consumers to warrant dismissal as a matter of law.

Although the Court finds it unlikely a reasonable consumer would confuse a clear message of contrast with affiliation, that question is better reserved for summary judgment. The Court finds UWM has sufficiently pleaded facts to allege likelihood of confusion.

<u>Fair Use:</u>

Even if UWM states a plausible trademark infringement claim, there would be "no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Hensley,* 579 F.3d at 613. Here, the Court finds that Defendants cannot conclusively show fair use.

The fair use defense to an infringement claim is "a use, otherwise than as a mark, . . . which is descriptive of and used fairly and in good faith only to describe the goods . . . of such party." *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) (citing 15 U.S.C. § 1115(b)(4)). In other words, "the fair use defense has two elements. The defendant must (i) use the label in a descriptive or geographic sense and (ii) do so fairly and in good faith." *Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 857 (6th Cir. 2018).

The parties disagree as to whether Walker's use of the mark falls within the fair use exception. *See* ECF No. 13, PageID.99-103; ECF No. 16, PageID.140-141.

Defendants argue that because Walker is using the mark to criticize and comment on UWM's services, and not to "identify the source of any products or services," his use of the mark is a permissible fair use.  ECF No. 18, PageID.235.  However, as mentioned above, the Court finds Defendants are not using UWM's mark in a descriptive sense, they are using it to identify UWM.  Additionally, UWM has alleged sufficient facts that Walker's improper use of UWM's mark is being done to promote Mortgage Solutions' products and services.  That is enough to allege a trademark infringement claim.

Relatedly, Defendants point out that this Court has previously found no trademark infringement where the trademark was used to "compare competing products in advertising, and in doing so, to identify by trademark, the competitor's goods." *EBC Brakes USA, Inc. v. Teagan*, No. 11-CV-12907, 2013 WL 12181866, at \*6 (E.D. Mich. Nov. 4, 2013); *see also* ECF No. 13, PageID.101 (discussing *Wells Fargo & Co. v. WhenU.com, Inc*., 293 F. Supp. 2d 734, 761 (E.D. Mich. 2003)).  However, Defendants fail to acknowledge that comparative advertising is not trademark infringement only "*so long as* it does not contain misrepresentations *or create a reasonable likelihood that purchasers will be confused* as to the source, identity, or sponsorship of the advertiser's product." *Teagan*, 2013 WL 12181866, at \*6 (emphasis added).  Here, as discussed above, UWM alleges likelihood of confusion sufficient to survive a motion to dismiss.

21

Consequently, Defendants cannot "conclusively establish" a fair use defense as a matter of law such that dismissal would be appropriate. *See Hensley*, 579 F.3d at 613.

## IV.

Based on the foregoing, the Court finds that UWM's motion to amend as to its breach of contract claim is neither futile nor made in bad faith. The Court also finds that the FAC would not be futile as to the trademark infringement claim. Despite that finding, the Court finds UWM attempted to amend its complaint in bad faith as to the trademark infringement claim.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** UWM's Motion for Leave to File a First Amended Complaint (ECF No. 17). The motion is granted as to the Breach of Contract claim (Count I) and denied as to the Trademark Infringement claim (Count II). Because the Court grants UWM leave to amend and finds that amendment would not be futile, the Court **DENIES AS MOOT** Defendants' Motion to Dismiss (ECF No. 13).

**IT IS SO ORDERED.**

Dated: November 22, 2024                    s/Brandy R. McMillion
                                           BRANDY R. MCMILLION
                                           United States District Judge

22