## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE,
LLC,

       Plaintiff,

v.

MORTGAGE SOLUTIONS FCS, INC.
and RAMON WALKER,

       Defendants.

Case No. 2:24-cv-10376
Hon. Brandy R. McMillion

**JURY TRIAL DEMANDED**

---

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff United Wholesale Mortgage, LLC ("Plaintiff" or "UWM") submits

the following First Amended Complaint against Defendants Mortgage Solutions

FCS, Inc., ("Mortgage Solutions") and Ramon Walker ("Walker"):

## PARTIES

1.     UWM is a Michigan limited liability company with its principal place

of business at 585 South Boulevard East, Pontiac, Michigan 48341. UWM's sole

member is UWM Holdings, LLC, which is comprised of two members, SFS Holding

Corp. and UWM Holdings Corporation. SFS Holding Corp. is incorporated in

Michigan and has its principal place of business at 585 South Boulevard East,

Pontiac, Michigan 48341. UWM Holdings Corporation is incorporated in Delaware

and has its principal place of business at 585 South Boulevard East, Pontiac, Michigan 48341.

2.      Upon information and belief, Defendant Mortgage Solutions is incorporated in California with its principal place of business at 2700 Ygnacio Valley Road, Walnut Creek, California 94598.

3.      Upon information and belief, Defendant Walker is the founder and owner of Mortgage Solutions who resides in California and, in connection with the matters alleged herein, transacts or has transacted business in this District.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this Complaint states an action that is between citizens of different states and, as set out below, involves an amount in controversy that exceeds $75,000, exclusive of interest and costs. This Court also has federal question jurisdiction pursuant to 28 USC § 1331, as UWM asserts claims under the Lanham Act.

5.      This Court has jurisdiction over Mortgage Solutions because it has established minimum contacts with the State of Michigan by, among other things, entering into a contract with UWM, a Michigan company headquartered in Pontiac, Michigan, and submits loans to UWM for purchase such that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice.

6.     This Court also has jurisdiction over Mortgage Solutions because it agreed to submit any action arising out of its Wholesale Broker Agreement and Correspondent Agreement with UWM to the exclusive jurisdiction of this Court in this District and waived its right to challenge this Court's personal jurisdiction over it. Ex. A, 2012 Wholesale Broker Agreement at ¶ 6.16; Exs. B-D, Correspondent Agreements, at ¶ 7.14.

7.     This Court has jurisdiction over Walker because he holds a Mortgage Loan Originator License in Michigan, he transacts business in Michigan relating to the issuance of loans for Michigan properties or individuals, and he created and is the administrator and moderator for a Facebook group subject to the claims asserted in this Complaint. The Facebook group relates to two companies headquartered in Michigan and markets to the Michigan mortgage channel.

8.     Venue in this District is proper under 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Further, in the Wholesale Broker Agreement and Correspondent Agreement, UWM and Mortgage Solutions agreed that they would submit any action arising out of the Agreement to this Court in this District. *See id.*

## GENERAL ALLEGATIONS

9.     UWM is a Pontiac, Michigan-based wholesale mortgage lender that works   exclusively   with   independent   mortgage   brokers   and   non-delegated

correspondent lenders ("Broker Partners") across the country. UWM is the number one overall mortgage lender and purchase lender in the nation and has been the number one wholesale lender for eight consecutive years.

10.     UWM itself does not work directly with borrowers until after a loan has funded. Rather, the Broker Partners communicate directly with borrowers and select from over 100 wholesale lenders to choose the lender and loan product they believe to be the borrower's best option.

11.     UWM provides its Broker Partners with considerable resources, including technology, marketing materials, compliance support, training, and more to help the Broker Partners compete, win, and grow their business.

12.     UWM's investment into and support of its Broker Partners is meant to distinguish UWM's exceptional services and those of its Broker Partners from UWM's competitors. UWM takes these investments seriously and expends significant resources to enhance the business of its Broker Partners, as UWM's success is dependent on the long-term success of its Broker Partners.

13.     Mortgage Solutions is a non-delegated correspondent lender with five offices across the nation and over 200 loan officers.

14.     Mortgage Solutions' growth and success in the mortgage industry is partially attributable to UWM's investment in and support provided to Mortgage Solutions as one of its Broker Partners.

15.     In January 2012, Mortgage Solutions elected to avail itself of UWM's products, services, and resources and entered a Wholesale Broker Agreement with UWM. Ex. A. The Wholesale Broker Agreement was subsequently amended and agreed to by the parties from time to time. Under the Wholesale Broker Agreement, Mortgage Solutions agreed "to offer to UWM for potential purchase and/or funding certain FHA, VA, and/or conventional mortgage loans as well as select bond program mortgage loans which fall within the parameters of UWM's mortgage loan products." *Id*. at 1.

16.     Later, in March 2020, Mortgage Solutions elected to become a non-delegated correspondent of UWM and entered into a Correspondent Agreement. Ex. B (the "2020 Agreement"). Under the 2020 Agreement, Mortgage Solutions agreed that it "may from time to time sell to UWM, first and second lien position residential mortgage loans . . . made to individual borrowers . . . in Correspondent's name." *Id*. at p. 1.

17.     Mortgage Solutions was free to terminate the 2020 Agreement at any time and for any reason, upon seven days' prior written notice. Ex. B at § 7.05. Likewise, UWM could terminate the 2020 Agreement at any time and for any reason, upon seven days' prior written notice. *Id*.

18.     Otherwise, the 2020 Agreement was "for an initial term of one (1) year and [] automatically renew[ed] for successive terms of one (1) year each unless

sooner terminated." *Id*. at § 7.06.

19.     The 2020 Agreement could be amended in several ways. One such way

is under Section 7.07, by which the 2020 Agreement could be amended if UWM

provided notice to Mortgage Solutions of the amendment and, after receiving such

notice, Mortgage Solutions submitted loans to UWM:

> **7.07. UWM Amendments & Website.** This Agreement
> and the policies, procedures and instructions of UWM,
> including but not limited to those contained in the UWM
> Guide, may be amended by UWM from time to time upon
> written notice to the Correspondent of the amendment,
> which may occur by posting any such amendments on
> UWM's website, which Correspondent is required to
> regularly check and monitor as a condition of this
> Agreement. The Correspondent agrees that submissions to
> UWM after such notification shall be the Correspondent's
> agreement to the amendment without further signature or
> consent of any kind. Any such amendment shall apply to
> pending and/or future submissions by the Correspondent.

Ex. B at § 7.07.

20.     Additionally, UWM requires all Broker Partners to approve yearly

agreement renewals on the anniversary date of the Broker Partners' initial signing

of an agreement with UWM.

21.     In November 2021 and November 2022, Mortgage Solutions reviewed

UWM's yearly agreement renewal package and approved the renewals through

UWM's online broker-facing portal. The 2021 Correspondent Agreement that

Mortgage Solutions agreed to during the November 2021 renewal is attached as

Exhibit C ("2021 Amendment"). The 2022 Correspondent Agreement that Mortgage Solutions agreed to during the November 2022 renewal is attached as Exhibit D ("2022 Amendment").[1]

**Mortgage Solutions' Breach of the Early Payoffs Provision**

22.     The 2020 Agreement, and its 2021 and 2022 amendments, each contain an "Early Payoffs" provision, where Mortgage Solutions agreed to reimburse UWM if a loan that Mortgage Solutions delivered to UWM under the Correspondent Agreement was paid off within 180 days. Exs. B-D at ¶ 7.16. In relevant part, the EPO provision states:

> UWM is committed to the long term performance of its loans. As such, if any Loan delivered hereunder is paid off within one hundred eighty (180) days of the disbursement date of such Loan for any reason, then Correspondent shall reimburse UWM for all amounts paid by UWM to the Correspondent in Connection with said Loan, or pay UWM one (1%) percent of the amount of the Loan, whichever is greater ("EPO") . . . [Ex. D at § 7.16.][2]

23.     From June 2020 through May 2023, at least 12 loans delivered by Mortgage Solutions were paid off within 180 days of disbursement.

24.     As of December 1, 2023, Mortgage Solutions carried an Early Payoffs balance of at least $124,011.37. *Id.* The Early Payoffs balance remains unpaid. *Id.*

---

[1] The 2020 Agreement, 2021 Amendment, and 2022 Amendment are collectively referred to as the "Correspondent Agreement."

[2] The relevant language of the EPO provision in the 2020 Agreement contains a minor difference. See Ex. B at ¶ 7.16.

25.     Mortgage Solutions' failure to pay its Early Payoffs balance is a breach of the Correspondent Agreement that has caused UWM damage.

26.     Mortgage Solutions further agreed that if "a dispute arises under this [Correspondent] Agreement between [Mortgage Solutions] and UWM which results in legal action being taken by one or both of the parties, then the prevailing party shall be entitled to recover as its reasonable attorneys' fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and the non-prevailing party hereby agrees to promptly pay same." Exs. B-D at § 7.15.

**Walker's infringement of UWM's Trademark**

27.     UWM's "UWM UNITED WHOLESLAE MORTGAGE®" trademark ("Mark") is one of the most well-known and highly regarded trademarks in the country:



28.     UWM's Mark was registered on March 21, 2017 in the field of mortgage banking under US Serial Number 87110573 and US Registration Number 5164786. UWM's registration of the Mark is valid, unrevoked, subsisting, incontestable, and constitutes *prima facie* evidence of UWM's exclusive ownership

of the Mark.

29.    UWM spends millions of dollars and expends significant effort in advertising, promoting, and developing its Mark throughout the country. As a result of such advertising and expenditures, UWM has established considerable goodwill in the Mark. The Mark is widely known and recognized throughout the country as a symbol of UWM's exceptional services. Indeed, UWM was founded in 1986, and has transacted business under the Mark since at least 2016.

30.    The Mark is famous and distinctive and is associated by the public exclusively with UWM. The Mark is an invaluable asset of substantial and inestimable worth to UWM.

31.    Walker uses his Facebook profile to advertise the goods and services of Mortgage Solutions, d/b/a Client Direct Mortgage.

32.    Walker's profile advertises himself as "Founder, Director, CEO at Client Direct Mortgage" and contains various links to his business websites. In addition, his Facebook banner promotes Mortgage Solutions:



33.    Walker also regularly posts to his Facebook profile advertising the goods and services of Mortgage Solutions, which appears to partner with Rocket Pro TPO:





34.    On October 28, 2023, Walker used his Facebook profile to create a Facebook group entitled "Rocket Pro TPO vs UWM."

35.    Walker used his Facebook profile to advertise the Facebook group, which at the time, blatantly displayed UWM's Mark:



36.     As the creator, administrator, and moderator of the Facebook group, Walker controls the contents of the group, including the banner photograph and posts made within the group.

37.     Walker used his Facebook profile to promote the Facebook group and his posts also blatantly display UWM's Mark:



38.     Within the Facebook Group, Walker advertised the goods and services of his company, Mortgage Solutions:



39.     Walker also advertised the goods and services of Mortgage Solutions'

apparent partner, Rocket Pro TPO, in the Facebook Group:



40.     Moreover, while the Facebook group is entitled "Rocket Pro TPO vs UWM" and its "About" section describes the group as a "place where honest and uninfluenced conversations can take place," the main prerogative of the group seems to be to undermine UWM's business, which Walker condones:





41.    UWM did not provide Walker consent to use the Mark in connection with his Facebook profile or the Facebook group.

42.    Walker used UWM's Mark in commerce by posting it to his profile and on the Facebook group, which he uses in connection with his advertising of goods and services he provides as a mortgage broker and correspondent lender.

43.    Walker's use of UWM's Mark is likely to cause the mortgage industry and consumers confusion or to mistake or be deceived that UWM authorizes, sponsors, or endorses Walker's goods or services.

44.    Walker's unauthorized use of UWM's Mark in his Facebook profile and the Facebook group has been made public on the internet—and more importantly, to UWM's clients and business partners, which interferes with the relationship between UWM and its brokers, who may be confused or mistaken as to the services UWM provides.

45.    Walker's use of UWM's Mark in his Facebook profile and the Facebook group was likely to cause, and did cause, confusion in the mortgage marketplace and among customers of UWM's products and services.

**COUNT ONE**
**BREACH OF CONTRACT**
**(AGAINST MORTGAGE SOLUTIONS)**

46. Paragraphs 1 through 26 are incorporated by reference as if fully stated herein.

47. The Correspondent Agreement is a valid contract that binds Mortgage Solutions and UWM.

48. The Correspondent Agreement requires Mortgage Solutions to promptly pay UWM in the event that any loan it delivered to UWM was paid off within one hundred eighty (180) days of the disbursement of the loan.

49. Mortgage Solutions breached the Correspondent Agreement by failing to pay its outstanding Early Payoff balance of at least $124,011.37 with respect to at least twelve loans.

50. As a result, UWM has suffered damages pursuant to the Correspondent Agreement's Early Payoffs provision in the amount of at least $124,011.37, plus its reasonable attorneys' fees, costs, and other expenses associated with the enforcement of its rights under the Correspondent Agreement.

WHEREFORE, UWM respectfully requests that the Court enter judgment against Mortgage Solutions in an amount of at least $124,011.37; attorney fees, costs, and other expenses incurred in this action; pre- and post-judgment interest; and such other and further relief as the Court may deem just and proper.

## COUNT TWO
**FEDERAL TRADEMARK INFRINGEMENT UNDER 15 USC § 1114
(AGAINST WALKER)**

51.     Paragraphs 1 through 14 and 27 through 45 are incorporated by reference as if fully stated herein.

52.     UWM's Mark is inherently distinctive and has acquired secondary meaning. The public associates UWM's Mark exclusively with UWM's products and services. This is a result of the inherent distinctiveness of UWM's Mark that was acquired through extensive advertising, sales, and use in commerce throughout the United States in connection with the products and services offered by UWM.

53.     Despite UWM's well-established rights in the Mark, Walker used, without UWM's consent, designations that are identical to, or substantially indistinguishable from the UWM Mark in commerce.

54.     Walker has acted with knowledge of UWM's ownership of the UWM Mark and with intention to cause confusion, mistake, or to deceive.

55.     Walker's misappropriation of the UWM logo caused confusion in the mortgage marketplace and among customers of UWM's products and services.

56.     UWM has been damaged as a result of Walker's conduct.

WHEREFORE, UWM respectfully requests that the Court enter judgment against Walker in an amount to be determined at trial, and for such other and further relief as the Court may deem just and proper, including damages, treble damages,

statutory damages, the equitable remedy of an accounting and disgorgement, all revenues and/or profits wrongfully derived by Walker from his infringement of UWM's Mark, and UWM's attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## JURY DEMAND

UWM respectfully demands a trial by jury on all issues triable by jury.

Respectfully submitted,

*/s/ Mahde Y. Abdallah*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com
Dated: November 25, 2024          *Attorneys for Plaintiff*